# EXHIBIT B

quinn emanuel trial lawyers | new york
295 5th Avenue, 9th Floor, New York, New York 10016 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7234**

WRITER'S EMAIL ADDRESS
**alexzuckerman@quinnemanuel.com**

April 7, 2026

**Via Email**

Jennifer Junger
jungerj@gtlaw.com
333 SE 2nd Avenue
Suite 4400
Miami, FL 33131

Re: *Renegade Capital GP, LLC v. Abacus Life, Inc n/k/a Abacus Global Management, Inc.*, Case No. 6:25-cv-00424-CEM-NWH (M.D. Fla.)

Counsel:

We write to memorialize the meet and confers between Plaintiff Renegade Capital GP, LLC d/b/a RiverRock ("Plaintiff" or "RiverRock") and Defendant Abacus Global Management, Inc. ("Defendant" or "Abacus") on April 1, 2026 (the "April 1 Meet and Confer") and April 6, 2026 (the "April 6 Meet and Confer") regarding Defendant's First Short Form Motion to Compel Plaintiff's Production of Documents and Further Responses to Interrogatories (the "Liability Motion to Compel"), *see* Dkt. No. 47, and Defendant's Second Short Form Motion to Compel Plaintiff's Production of Documents (the "Damages Motion to Compel"), *see* Dkt. No. 48. Defendant reserves all rights regarding these matters.

The following Requests for Production ("RFPs") were addressed in Defendant's Motions to Compel and discussed during the Meet and Confers:

## I. Document Requests Where the Parties are at an Impasse[1]

- **RFP No. 3** asks for "[a]ll Documents and Communications related to the 'data room' created by RiverRock alleged in paragraph 23 of the Complaint, including (i) the platform and web address that was used for the data room, (ii) all Documents that were added to the data room and what date and time they were added, including but not limited to those identified in Paragraph 24 of the Complaint, (iii) the security measures that were in place to protect the data room; and (iv) any logs or evidence of who accessed each document in the data room, including the data and time of access and whether such document was viewed or downloaded."

  In its Response in Opposition to Defendant's Liability Motion to Compel (the "Opposition to the Liability Motion"), Dkt. 56, Plaintiff stated it will not produce documents responsive to parts (i), (iii), or (iv), because "[t]hose technical details are not proportional." Opp. to Liability Mot. at 3.

  In an October 3, 2025 letter from Alex Zuckerman to Jennifer Junger (the "October 3 Letter"), Dkt. No. 47-5 (Liability Mot., Ex. E), Defendant explained that access logs bear on whether Plaintiff treated the data room documents as confidential, that upload dates and times establish whether the alleged Confidential Information was even in the data room, and that security measures show what steps Plaintiff took to protect its Confidential Information. October 3 Letter at 8. An October 15, 2025 letter from Alex Zuckerman to Jennifer Junger (the "October 15 Letter"), Dkt. No. 47-6 (Liability Mot., Ex. F), further explained that whether the data room was shared with other parties *after* the alleged breach is relevant to whether Plaintiff's information was actually confidential. October 15 Letter at 6. And a February 6, 2026 letter from Alex Zuckerman to Jennifer Junger (the "February 6 Letter"), Dkt. No. 47-7 (Liability Mot., Ex. G), reiterated that "Abacus cannot mount a thorough defense" if "RiverRock refuses to identify specific pieces of Confidential Information subject to the alleged breach." February 6 Letter at 2. During the April 6 Meet and Confer Defendant again made clear that financial information previously provided to Abacus does not form the entire universe of information potentially relevant to the actual value of RiverRock (whether as of the date of the breach or the date of trial when the factfinder shall assess damages). **Please confirm whether Plaintiff will produce responsive documents to parts (i), (iii), and (iv), or whether Plaintiff maintains its position and we are at an impasse.**

---

[1] During the April 1 Meet and Confer, Plaintiff objected to many of Defendant's damages-related RFPs as overbroad. Defendant explained that these RFPs are necessarily broad because Plaintiff's damages theory is broad and Defendant needs to test Plaintiff's damages theory. For example, Plaintiff alleges that it suffered damages relating to the alleged decrease in its business value; the alleged "mass exodus" of employees; and lost investment and acquisition opportunities. Defendant offered to narrow its damages related RFPs if Plaintiff clarified its damages theory in writing. Plaintiff agreed. But five days later Plaintiff reversed its position on the April 6 Meet and Confer and declined to provide that information. Defendant was therefore unable to further narrow its damages-related RFPs.

- **RFP No. 5** asks for "[a]ll Documents and Communications relating to RiverRock's business and financial information that were provided to Abacus in connection with the potential Business Transaction."

  In its Response in Opposition to Defendants' Damages Motion to Compel (the "Opposition to the Damages Motion"), Dkt. 57, Plaintiff agreed to produce "the business and financial information that was provided to Abacus" but objected to producing documents "relating to" or "underlying" those records as "impermissibly vague and overbroad." Opp. to Damages Mot. at 2.

  In the October 3, 2025 Letter, Defendant explained that this RFP covers documents beyond the data room itself, including financial documents underlying the data room materials and documents sent to Plaintiff's CPA. October 3 Letter at 9. The October 15, 2025 Letter reiterated that this RFP "covers financial Documents underlying the data room Documents" so that Defendant can "assess what Plaintiff's business was worth." October 15 Letter at 3. The February 6, 2026 Letter explained that "RiverRock's failure to produce [such] information prejudices Abacus from adequately assessing RiverRock's damages and confidentiality claims." February 6 Letter at 3. Finally, during the April 6 Meet and Confer, Defendant again explained that the financial information previously provided to Abacus does not speak to the actual value of RiverRock, and thus Defendant needs the data used to derive the assertions made in those documents. And, given that Plaintiff's damages relate to the entire value of its business, Defendant is entitled to information necessary to test that value. **Please confirm whether Plaintiff will produce documents underlying or supporting the financial information provided to Abacus, or whether we are at an impasse.**

- **RFP No. 6** asks for "[a]ll Documents and Communications related to the RiverRock Funds LLC Valuation Model dated September 30, 2023 that was sent by You to Abacus."

  In its Opposition to the Damages Motion, Plaintiff agreed to produce responsive documents. Opp. to Damages Mot. at 3. During the April 6 Meet and Confer, Plaintiff confirmed that it reads the phrase "related to" as limiting responsive documents to only those that "mention the valuation model" or that "hit on a search term."

  Defendant, however, has consistently maintained that "related to" also includes the financial documents underlying the valuation, whether or not those documents hit on particular search terms. For example, in the October 3, 2025 Letter, Defendant explained documents responsive to this request may include "financial documents and business planning documents that support the data found in the Valuation Model." October 3 Letter at 10 (*see also* RFP No. 28, *infra*). And Defendant's February 6, 2026 Letter reiterated that "RiverRock's failure to produce [these documents] prejudices Abacus from adequately assessing RiverRock's damages and confidentiality claims." February 6 Letter at 3. Plaintiff still refuses to produce these documents, and has not provided an adequate basis for its position after six months' worth of opportunities to do so. **Please confirm whether Plaintiff will produce documents underlying or supporting the Valuation Model, or whether we are at an impasse.**

- **RFP No. 7** asks for "[a]ll Documents underlying or supporting the financial data and information in the RiverRock Funds LLC Valuation Model dated September 30, 2023 that was sent by You to Abacus."

  Plaintiff agreed to produce "the business and financial information that was provided to Abacus" but objected to documents "relating to" or "underlying" those records as "impermissibly vague and overbroad." Opp. to Damages Mot. at 2. During the April 6 Meet and Confer, Plaintiff maintained its objections but offered to produce all responsive documents subject to reviewing the applicable search terms.

  Defendant, however, has previously explained that "search terms . . . are inadequate where, as here, RiverRock is uniquely positioned to know what documents it relied on in creating the Model it sent to Abacus." *See* February 24, 2026 Email from Rebecca Jin to Jennifer Junger. Defendant has tried to describe with specificity the documents it is seeking. In the October 3, 2025 Letter, Defendant clarified that this RFP seeks documents "underlying or supporting" the Valuation Model that were not necessarily sent to Defendant, including "financial Documents and business planning Documents that support the data found in the Valuation Model." October 3 Letter at 10. Defendant still does not understand why Plaintiff's counsel is not able to speak to Plaintiff about the financial model it supposedly created and allegedly shared with Abacus to determine what resources were used to create the model. Nonetheless, Defendant has given Plaintiff ample guidance as to what is relevant. The October 15, 2025 Letter further specified that documents responsive to this request would include "Plaintiff's general ledger, profit and loss spreadsheet, financial statements, and valuations of individual assets that underlie the funds being managed." October 15 Letter at 3. Yet Plaintiff has not agreed to produce those documents, either. **Please confirm whether Plaintiff will produce the underlying financial documents identified above, or whether we are at an impasse.**

- **RFP No. 24** asks for "[a]ll Documents and Communications relating to or supporting Your allegations in Paragraph 58 of the Complaint, including but not limited to all communications with potential investors regarding (i) the alleged breach of the Confidentiality Agreement, (ii) the RiverRock investment opportunities; and (iii) the potential investors' unwillingness to invest in or do business with RiverRock because of the alleged breach."

  In its Opposition to the Liability Motion, Plaintiff agreed to produce documents responsive to subparts (i) and (iii) but objected to subpart (ii) as "broadly seek[ing] all communications regarding investment opportunities" that are "untethered to the alleged breach." Opp. to Liability Mot. at 3.

  In the October 3, 2025 Letter, Defendant explained that this RFP is "relevant to determining causation, and determining whether the investor withdrew its investment as a direct result of the alleged breach," and that "the actions that Plaintiff took with the investors after the alleged breach are relevant to determining the extent that Plaintiff mitigated its damages." October 3 Letter at 12. The February 6, 2026 Letter reiterated that these documents are also relevant to "the confidentiality of the alleged Confidential

Information, damages, and Plaintiff's mitigation efforts." February 6 Letter at 2. During the April 1 Meet and Confer, Defendant explained that this RFP is relevant to damages because the Complaint alleges that the RiverRock entity itself has been damaged, and the parties agreed they were at an impasse. **Please confirm Plaintiff's final position on subpart (ii).**

- **RFP No. 28** asks for "[a]ll Documents related to RiverRock's financial performance, including internal forecasts, business plans, balance sheets, cash flow statements, adjusted financial statements, consolidated financial statements, statement of net assets, income statements, and internal or external valuations of RiverRock for the past five years."

  Plaintiff objected to this request as "overbroad and not proportional," arguing that the Board Deck and the financial information provided to Abacus are sufficient for Defendant "to test RiverRock's damages and prepare [Plaintiff's] expert." Opp. to Damages Mot. at 3. We do not agree that Plaintiff's expert's view of information relevant to his or her damages opinion defines the outer bound of discoverable material that may be relevant to rebutting that opinion.

  The Federal Rules clearly cover "any nonprivileged matter that is relevant to ***any party's*** claim ***or defense*** . . . ." FRCP 26(b)(1) (emphasis added). Accordingly, in the October 15, 2025 Letter, Defendant explained that "the health of the company in the past five years is relevant to why Plaintiff's employees resigned, *i.e.*, if RiverRock was already facing economic uncertainty," and that "the actual valuation of the business over the past five years is relevant to damages." October 15 Letter at 5. The February 6, 2026 Letter reiterated that Defendant needs this information to independently assess RiverRock's damages and confidentiality claims. February 6 Letter at 2–3. During the April 6 Meet and Confer, Defendant further explained that these documents are necessary for Defendant and its experts to independently value the Plaintiff's business, and that Defendant is entitled to this information even if Plaintiff's own experts do not intend to rely on it. Defendant also explained that these documents would not be responsive to search terms and that Plaintiff's counsel would need to request them directly from Plaintiff. Defendant offered to consider a compromise position on the relevant time period, and Plaintiff agreed to take this proposal under advisement. **Please confirm whether Plaintiff will produce responsive documents—including for the narrowed three-year period — or whether we are at an impasse.**

- **RFP No. 29** asks for "[a]ll Documents relating to or supporting Your calculation of RiverRock's valuation and/or acquisition price for the past five years." Plaintiff objected to this request as "overbroad and not proportional," incorporating its objection to RFP No. 28. Opp. to Damages Mot. at 3.

In the October 15, 2025 Letter, Defendant explained that "the health of the company in the past five years is relevant to why Plaintiff's employees resigned" and that "the actual valuation of the business over the past five years is relevant to damages." October 15 Letter at 5. During the April 6 Meet and Confer, Defendant explained that it is aware of at least two potential acquisitions by Obra Capital and Kosmos Management. Defendant explained that documents sufficient to show prices put forward in those deals may satisfy the request. Plaintiff stated it would take this proposal under advisement.

During the April 6 Meet and Confer, Plaintiff also raised the argument that NDAs associated with those acquisitions may bar production, and agreed to review its NDAs and advise Defendant of its finding. Courts routinely find that "confidentiality agreements [do] not stand as a barrier to discovery between two parties in litigation." *Shvartser v. Lekser*, 270 F. Supp. 3d 96, 98 (D.D.C. 2017) (collecting cases). The proper remedy is "entering a protective order." *Id.* After reviewing the Confidentiality Order entered on March 31, 2025, Defendant is confident that the order affords the necessary protection; for example, Plaintiff can designate those documents as "Confidential Information." **Please confirm whether Plaintiff will produce responsive documents, or whether we are at an impasse.**

- **RFP No. 33** asks for "[a]ll Documents and Communications regarding any potential acquisition of RiverRock by any party or entity between January 1, 2023 and January 1, 2025, including investor presentations, financial models, internal valuations, external valuations, letters of intent, term sheets, and all communications between Abacus and any potential investor or acquirer." Plaintiff objected to this request as "overbroad and not proportional." Opp. to Liability Mot. at 3.

In the October 3, 2025 Letter, Defendant explained that "[p]otential acquisitions of RiverRock are relevant to establishing the damage caused to the enterprise by Abacus's alleged breach." October 3 Letter at 13. The October 15, 2025 Letter further explained that "the price discussed in the course of a potential acquisition was probative of the amount of damages Plaintiff seeks due to the breach, any mitigation of damages, and relevant to determining the impact of the breach." October 15 Letter at 5. The February 6, 2026 Letter reiterated that these documents are relevant to "the confidentiality of the alleged Confidential Information, damages and Plaintiff's mitigation efforts." February 6 Letter at 2.

During the April 6 Meet and Confer, Plaintiff also raised the argument that NDAs associated with those acquisitions may bar production, and agreed to review its NDAs and advise Defendant of its finding. Courts routinely find that "confidentiality agreements [do] not stand as a barrier to discovery between two parties in litigation." *Shvartser v. Lekser*, 270 F. Supp. 3d 96, 98 (D.D.C. 2017) (collecting cases). The proper remedy is "entering a protective order." *Id.* After reviewing the Confidentiality Order entered on March 31, 2025, Defendant is confident that the order affords the necessary protection; for example, Plaintiff can designate those documents as "Confidential Information." **Please confirm whether Plaintiff will produce responsive documents, or whether we are at an impasse.**

- **RFP No. 34** asks for "[a]ll Documents and Communications related to RiverRock's potential acquisition by Obra Capital in 2023 and 2024, including but not limited to (i) all financial models, internal valuations, cash flows, and other financial information provided to Obra; (ii) letters of intent or term sheets related to a potential acquisition of RiverRock by Obra; and (iii) communications between You and Obra regarding a potential acquisition."

  Plaintiff objected to this request as "overbroad and not proportional." Opp. to Liability Mot. at 3. In the October 3, 2025 Letter, Defendant explained that documents related to RiverRock's potential acquisition by Obra are "relevant to establishing the damages that Plaintiff alleges it is entitled to, and to establish the validity of Plaintiff's valuation, on which Plaintiff bases its damages." October 3 Letter at 14. The October 15, 2025 Letter acknowledged that "Plaintiff … understood Defendant's position that what Plaintiff was telling Obra about Plaintiff's worth is relevant," and that Plaintiff's counsel was "willing to see what RiverRock could produce." October 15 Letter at 5. The February 6, 2026 Letter continued to reiterate that these documents are relevant to assessing "RiverRock's mitigation efforts." February 6 Letter at 2.

  During the April 6 Meet and Confer, Plaintiff also raised the argument that NDAs associated with those acquisitions may bar production, and agreed to review its NDAs and advise Defendant of its finding. Courts routinely find that "confidentiality agreements [do] not stand as a barrier to discovery between two parties in litigation." *Shvartser v. Lekser*, 270 F. Supp. 3d 96, 98 (D.D.C. 2017) (collecting cases). The proper remedy is "entering a protective order." *Id.* After reviewing the Confidentiality Order entered on March 31, 2025, Defendant is confident that the order affords the necessary protection; for example, Plaintiff can designate those documents as "Confidential Information." **Please confirm whether Plaintiff will produce responsive documents, or whether we are at an impasse.**

- **RFP No. 35** asks for "[a]ll Documents and Communications related to the March 6, 2024 article published in The Deal by Donna Horowitz titled 'Obra Plans to Buy RiverRock.'" Plaintiff objected to this request as "overbroad and not proportional." Opp. to Liability Mot. at 3.

  In the October 3, 2025 Letter, Defendant explained that documents related to the potential acquisition by Obra are "relevant to establishing the damages that Plaintiff alleges it is entitled to, and to establish the validity of Plaintiff's valuation, on which Plaintiff bases its damages." October 3 Letter at 14. The October 15, 2025 Letter further explained that "Plaintiff potentially being acquired, possibly at or near the same price as Defendant's potential acquisition of Plaintiff, undercuts Plaintiff's allegations of reputational harm and damages." October 15 Letter at 5-6. The February 6, 2026 Letter reiterated that these documents are relevant to assessing "RiverRock's mitigation efforts." February 6 Letter at 2.

During the April 6 Meet and Confer, Plaintiff also raised the argument that NDAs associated with those acquisitions may bar production, and agreed to review its NDAs and advise Defendant of its finding. Courts routinely find that "confidentiality agreements [do] not stand as a barrier to discovery between two parties in litigation." *Shvartser v. Lekser*, 270 F. Supp. 3d 96, 98 (D.D.C. 2017) (collecting cases). The proper remedy is "entering a protective order." *Id.* After reviewing the Confidentiality Order entered on March 31, 2025, Defendant is confident that the order affords the necessary protection; for example, Plaintiff can designate those documents as "Confidential Information." **Please confirm whether Plaintiff will produce responsive documents, or whether we are at an impasse.**

## II. Requests No Longer in Dispute

- **RFP No. 4** asks for "[a]ll Documents and Communications relating to the draft letter of intent titled 'Project Water.'" In its Opposition to the Damages Motion to Compel, Plaintiff stated it will "produce documents related to the valuation figure in the draft letter of intent." Opp. to Damages Mot. at 2. During the April 6 Meet and Confer, Plaintiff confirmed it will produce all responsive documents subject to reviewing the applicable search terms. **Please confirm that Plaintiff will produce responsive, non-privileged documents and communications.**

- **RFP No. 8** asks for "[a]ll Documents and Communications relating to the Board Deck, including RiverRock's internal communications, all communications between You and Abacus, and all communications between You and any third party." In its Opposition to the Damages Motion to Compel, Plaintiff agreed to produce responsive documents. Opp. to Damages Mot. at 2. During the April 6 Meet and Confer, Plaintiff confirmed it will produce all relevant, responsive, and non-privileged communications—including internal communications, communications between RiverRock and Abacus, and communications between RiverRock and third parties. **Please confirm that Plaintiff will produce responsive, non-privileged documents and communications.**

- **RFP No. 13** asks for "[a]ll Communications between You and any third party regarding the Board Deck, the inadvertent posting of the Board Deck by Abacus, or any information contained in the Board Deck." In its Opposition to the Liability Motion to Compel, Plaintiff agreed "to produce communications regarding the Board Deck to the extent they relate to damages and mitigation." Opp. to Liability Mot. at 3. **Please confirm that Plaintiff will produce responsive, non-privileged documents and communications.**

- **RFP No. 14** asks for "[a]ll Documents and Communications regarding the December 5, 2023 article titled 'Abacus Accidentally Posts Document on Potential RiverRock Deal.'" During the April 1 Meet and Confer, Plaintiff agreed to produce responsive internal communications and responsive communications with investors. During the April 6 Meet and Confer, Plaintiff confirmed it would also produce responsive communications with potential acquirers, to the extent those documents exist. **Please confirm that Plaintiff will produce responsive, non-privileged documents and communications.**

- **RFP No. 16** asks for "[a]ll Documents and Communications supporting Your allegation that 'Abacus, not RiverRock, determined that it would cut RiverRock's payroll from $4.7 million to $755,000' as alleged in Paragraph 49 of the Complaint." In its Opposition to the Damages Motion to Compel, Plaintiff agreed to produce responsive documents. Opp. to Damages Mot. at 3. During the April 6 Meet and Confer, Plaintiff confirmed it will produce the Board Deck and stated there are no other responsive documents for this RFP. **Please confirm that Plaintiff only intends to produce the Board Deck in response to this Request.**

## III. Search Terms

Finally, during the April 6 Meet and Confer, you asked us to provide individualized search terms for each of Defendant's RFPs. This is not a reasonable request. First, we can find no support in case law for this request. Second, you have not provided us with any hit report that would substantiate a burden requiring individualized search terms. Third, this is not consistent with standard e-discovery practice in federal litigation.

Please confirm Plaintiff's final position by Friday, April 10, 2026.

Best Regards,

Alex Zuckerman