**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

RENEGADE CAPITAL GP, LLC d/b/a RIVERROCK FUNDS LLC, a Delaware limited liability company,

Plaintiff,

v. Case No. 6:25-cv-00424-CEM-NWH

ABACUS LIFE, INC. n/k/a ABACUS GLOBAL MANAGEMENT, INC., a Delaware Corporation,

Defendant.

---

**PLAINTIFF'S *UNOPPOSED* MOTION FOR**
**LEAVE TO AMEND COMPLAINT**

Plaintiff, Renegade Capital GP, LLC d/b/a RiverRock Funds LLC ("RiverRock"), by and through its undersigned counsel, and pursuant to Federal Rules of Civil Procedure 15(a) and 16(b)(4) hereby files this Motion for Leave to File its First Amended Complaint[1] and in support thereof states as follows:

## FACTUAL BACKGROUND

1 The Proposed First Amended Complaint is attached hereto as **Exhibit 1**. It is redacted in limited part to the extent that the terms of the Confidentiality Agreement itself must remain confidential. As such, simultaneously with this motion, RiverRock is also filing a Motion to File the certain allegations in the Proposed First Amended Complaint redacted with the Confidentiality Agreement attached as Exhibit A under seal, which Defendant does not oppose.

This case arises from Abacus Life, Inc.'s ("Abacus") breach of a Confidentiality Agreement with RiverRock, effective September 5, 2023 (the "Confidentiality Agreement"). The parties entered into the Confidentiality Agreement in anticipation of a potential acquisition (the "Potential Acquisition") by Abacus of RiverRock, pursuant to which RiverRock disclosed sensitive, confidential, and proprietary business information to Abacus. The Confidentiality Agreement broadly protected not only RiverRock's confidential business and financial information, but also ***the existence of the Potential Acquisition*** and the "discussions between the Parties" about the Potential Acquisition.[2] Importantly, the Potential Acquisition was not public knowledge. RiverRock's employees were unaware that acquisition discussions were underway and were likewise unaware of the post-acquisition plans, including plans that contemplated substantial workforce reductions following the acquisition.

In advance of a November 14, 2023 board meeting, Abacus prepared a Board Deck that included two pages specifically devoted to the Potential Acquisition (the "Board Deck"). The first page disclosed information about RiverRock's financials, the acquisition price, gross revenue, estimated 2024 net revenue, fund structure, and the number of RiverRock's investors.

2 Because the Confidentiality Agreement's terms are confidential, it is the subject of RiverRock's Unopposed Motion to File under Seal. The Confidentiality Agreement is Exhibit A to the Proposed Amended Complaint attached hereto but pending RiverRock's Motion to Seal, there is currently a slip sheet in its place.

The second page contained a valuation and financial model (the "Valuation"), reflecting among other things, RiverRock's management fees, acquisition fees, carried interest, payroll, rent, commissions, accounting and tax information, technology services, net income, potential synergies, pro-forma cash flow, and 2024 financial projections. The Valuation contained in the second RiverRock related page in the Board Deck further disclosed that, if acquired, Abacus anticipated reducing the majority of RiverRock's workforce, reducing its payroll and rent budget from $4.7 million in 2023 to $755,000 in 2024 and $105,000 in 2025. The Board Deck therefore disclosed not only the existence of the Potential Acquisition, but also Abacus's anticipated post-acquisition plans for RiverRock and its workforce.

Notwithstanding its clear contractual obligations, Abacus publicly posted the Board Deck—including both pages related to the Potential Acquisition—on its public investor website. The Board Deck remained publicly accessible for approximately 36 hours, during which industry professionals viewed and shared its contents with RiverRock employees. A reporter from the Deal, a widely read industry publication to which RiverRock subscribes, obtained the Confidential Information and published an article further amplifying the unauthorized disclosure.

As a result of Abacus's disclosure, RiverRock suffered substantial harm. Its Confidential Information became publicly accessible, its reputation was damaged, key employees resigned, existing and potential investors withdrew or refrained from further investment, fundraising efforts stalled, and Abacus ultimately refused to

proceed with the Potential Acquisition. RiverRock's business never recovered from the consequences of the disclosure.

## PROCEDURAL BACKGROUND AND ABACUS' RULE 11 SAFE HARBOR LETTER TO RIVERROCK

On May 18, 2026, Abacus served RiverRock with a Rule 11 Safe Harbor Letter and proposed Motion for Sanctions directed to both the undersigned law firm and its client.

Specifically, Abacus challenges allegations that Confidential Information reflected in the RiverRock related slides of the Board Deck was obtained through the parties' diligence process, including the data room established in connection with the Potential Acquisition.[3] The Complaint alleges that a data room was established in connection with the parties' contemplated transaction to share Confidential Information, that RiverRock provided Confidential Information through that diligence process, that Mr. Annino added Mr. Jackson to the data room so Abacus

---

[3] In Abacus' proposed Motion for Sanctions, Abacus takes the position that it "spent eight months asking RiverRock to identify exactly what Confidential Information was at issue in this case." It has been clear since the inception of this case that the Confidential Information at issue is contained within the two RiverRock related pages in the Board Deck. RiverRock and Abacus spent countless hours on meet and confers where RiverRock explained that the contents of the data room is irrelevant to the question of whether a breach occurred. The breach relates to the Confidential Information found within the two RiverRock related pages in the Board Deck and the source of transmittal is not determinative of confidentiality status. Abacus' insistence on knowing what was in the data room is a distraction. Even by their own admission in the Rule 11 Safe Harbor Letter, Abacus knew that the Valuation was sent via email and not through the data room as early as August 1, 2025. Yet, they continued to press the issue of who accessed the data room and what was contained in the data room to distract from their liability.

could begin diligence, that after having reviewed the information from the data room, Mr. Jackson wrote to Mr. Annino confirming Abacus' interest in acquiring RiverRock, and that Abacus incorporated RiverRock's Confidential Information from the data room into the Board Deck that it later posted publicly. *See* ECF No. 11 ¶¶ 23-31. Abacus also challenges allegations relating to post-acquisition payroll reductions reflected in the Board Deck. *See id.* ¶ 49.

After the Complaint was filed, RiverRock learned that RiverRock's former CEO, Anthony Annino, emailed the Valuation reflected in the Board Deck to Abacus from his personal Gmail account while he was in the process of establishing the data room. A true and correct copy of this email is attached hereto as **Exhibit 2** (RENEGADE_000016).[4] RiverRock does not presently know the full contents of the data room because Annino was the only individual from RiverRock with access to it (he had also granted access to Abacus' CEO and their outside counsel). As such, RiverRock does not presently know all information that may have been contained within the data room, nor has discovery yet revealed the source of the information used in preparing the Valuation, the communications between Mr. Annino and

4 Even as alleged by Abacus' counsel, the other slide related to RiverRock in the Board Deck includes "a host of information, including things like assets under management, sort of the number of investors they would be able to tap into. I think it was like, 160 or something." *See* April 15, 2026 Tr. at 9:23-10:2. Information relating to RiverRock's investors and assets would also be Confidential Information. RiverRock had a good faith basis to believe that the "host of information" from the First Slide may have been from the data room especially considering the email sending the Valuation so clearly references documents being added to the data room. *See* Exhibit 2 ("I just uploaded the servicing agreements to the portal. . .").

Abacus regarding the Valuation, or the extent to which information reflected in the Board Deck overlapped with information exchanged through other channels. Because RiverRock knew that a data room had been established to facilitate the exchange of Confidential Information in connection with the Potential Acquisition, RiverRock had a good-faith basis at the time it filed the Complaint to believe that information reflected in the Board Deck had been obtained through the parties' diligence process, including the data room. *See id*. at ¶¶ 23-26. RiverRock also pleads, "according to Abacus, the valuation of RiverRock presented to the board and contained within the Board Deck was $10,029,963.00." *id*. at ¶ 31. RiverRock stands by this allegation, as once Abacus presented this information to its board, it adopted the figure as its own. Moreover, whether Abacus was the original source of the information in the Valuation is not a relevant inquiry. What matters is whether the Valuation figures were confidential and whether there was a breach.

After these foundational allegations, RiverRock pleads "despite clear contractual obligations prohibiting Abacus from disclosing the Confidential Information. . . Abacus breached the Confidentiality Agreement by placing RiverRock's Confidential Information into a public forum. On or around November 14, 2023, Abacus uploaded the entirety of the Board Deck, which included RiverRock's Confidential Information, to its website." *id*. at ¶¶ 33-34. The proposed amendment does not alter that allegation, which remains the central basis of RiverRock's breach-of-contract claim. In fact, Abacus admits that it posted the Board Deck to its website. *See* Abacus' sworn Responses to RiverRock's Interrogatories at

Interrogatory No. 6 ("Defendant states that the Board Deck which included two pages referencing Plaintiff out of a total of 38 pages, was inadvertently posted on Defendant's investor website during the period from November 14, 2023 at 10:26AM EST to November 15, 2023 at 3:30PM EST.") attached hereto as **Exhibit 3**.

RiverRock also alleges that "the most detrimental piece of Confidential Information posted on Abacus' website. . . was regarding RiverRock's payroll. Abacus, not RiverRock, determined that it would cut RiverRock's payroll from $4.7 million to $755,000, thus revealing Abacus' plans to terminate many of RiverRock's employees." *Id*. at ¶ 49. Like the explanation above for Paragraph 31, Abacus, at a minimum, adopted this element of the post-acquisition plan when it was presented to its board.

RiverRock has a good faith basis for all the foregoing allegations. The Confidentiality Agreement broadly defines Confidential Information and includes the subject of the agreement, which was the Potential Acquisition. The Confidentiality Agreement is **<u>not limited</u>** to information shared through the data room—it covers **<u>all</u>** Confidential Information exchanged between the parties in connection with Potential Acquisition. Whether the information came from the data room or an email, Abacus had a contractual duty to safeguard RiverRock's Confidential Information, and it breached that duty by posting the Board Deck with slides related to RiverRock's financials and the Potential Acquisition publicly. Further, whether it was Abacus who determined that payroll would be cut or Mr. Annino is irrelevant to the determination

of whether post-acquisition plans in a Valuation are Confidential Information that should not be publicly disclosed.

RiverRock contends that Abacus is trying to distract the Court from its liability by making this litigation more difficult and costly. However, rather than engage in collateral litigation concerning Rule 11, RiverRock seeks leave to amend its Complaint to clarify that it is no longer alleging that Abacus received the Valuation through the data room.

In fact, during a meet and confer phone call in advance of the April 15, 2026 hearing, RiverRock asked whether Abacus would consent to RiverRock moving for leave to amend its Complaint to clarify that the Valuation was transmitted via email. RiverRock expressed its belief that this is a minor allegation which does not alter its cause of action or theories of liability and was intended only to clarify a narrow factual allegation given Abacus' fixation on the issue. Abacus advised that it would likely oppose any such amendment on the grounds that the deadline to amend pleadings under the Case Management and Scheduling Order had expired.

Despite taking the position that it would oppose amendment, Abacus did not immediately pursue Rule 11 relief. Instead, approximately one month later, on May 18, 2026, Abacus served RiverRock with its Rule 11 Safe Harbor Letter and proposed Motion for Sanctions. Abacus now advises that it does not oppose RiverRock's request for leave to amend. These circumstances further support granting leave to amend, particularly where RiverRock sought to address the issue before the Rule 11 motion

was served and the requested amendment will narrow, rather than expand, the issues in dispute.

The proposed amendment is not intended to confirm of the contents of the data room, the source of the information used in preparing the Valuation, the open factual question of what information Abacus's own personnel may have communicated to Mr. Annino in connection with the preparation of the Valuation, or the communications between Mr. Annino and Abacus regarding the Valuation. Those issues remain subjects of ongoing discovery. The amendment is sought solely to clarify the allegations regarding the transmission of the Valuation and does not alter the nature of RiverRock's breach-of-contract claim and theories of liability.

## PROPOSED CHANGES TO COMPLAINT

Among other minor changes[5] RiverRock's proposed amendments are narrow and are intended to address the concerns raised in Abacus' Rule 11 Safe Harbor Letter while preserving the substance of RiverRock's breach of contract claim. Specifically,

- In Complaint Paragraph 23 (proposed Amended Complaint Paragraph 24), RiverRock deletes the word "the" before Confidential Information: "As customary with a potential acquisition, a data room to share [the] Confidential Information was created shortly after the execution of the Confidentiality Agreement, on or about September 13, 2023." This removes any insinuation that the Confidential Information from the Board Deck only came from the data room.

- In Complaint Paragraph 24 (proposed Amended Complaint Paragraph 25), RiverRock adds the words "may have" in reference to what Confidential Information may have been in the data room. This revision

[5] For example, RiverRock also learned in discovery that the Confidential Information was posted to Abacus' investor website rather than the www.abacuslife.com website.

reflects that discovery has not established the complete contents of the data room.

- In Complaint Paragraph 26 (proposed Amended Complaint Paragraph 27), RiverRock changes the sentence "After reviewing the documents in the data room" to "After reviewing the documents provided by RiverRock to Abacus." This revision reflects that Confidential Information may have been transmitted through multiple channels during the parties' transaction discussions and is not limited to information exchanged through the data room.

- In Complaint Paragraph 30 (proposed Amended Complaint Paragraph 31), RiverRock changes the sentence "Abacus included the Confidential Information from the data room in the slides of the board deck" to "Abacus included RiverRock's Confidential Information in the slides of the board deck" to reflect that the Confidential Information may have come from the multiple sources including but not limited to the data room. Confidential Information is not limited to what was in the data room.

- In Complaint Paragraph 48 (proposed Amended Complaint Paragraph 49), RiverRock changes "Abacus, not RiverRock, determined, that it would cut RiverRock's payroll" to "Abacus publicly shared that it would cut RiverRock's payroll." This revision narrows the allegation to the disclosure reflected in the Board Deck and avoids any dispute concerning who originally developed the payroll assumptions reflected in the Valuation although clearly adopted and disclosed by Abacus. The real issue is the disclosure of confidential information.

These amendments do not alter RiverRock's causes of action, theories of liability, or damages claims. Rather, they narrow certain factual allegations in response to information learned during discovery and eliminate issues identified by Abacus in its Rule 11 correspondence. An amendment under these circumstances is precisely

why the 21-day Safe Harbor rule exists, to allow parties to reach a mutually beneficial resolution rather than fight a sanctions battle.[6]

Accordingly, although RiverRock has not made any allegations that would provide a basis to warrant Rule 11 sanctions, following the spirit of Rule 11 and to eliminate any alleged issue, RiverRock seeks to amend the Complaint.

## LEGAL ARGUMENT

### I. Legal Standard

Federal Rule of Civil Procedure 15(a) provides that after a responsive pleading has been filed, a party may amend the complaint only by leave of court or by written consent of the adverse party. Fed. R. Civ. P. 15(a). Leave shall be freely given when justice so requires. *Id*. In construing Rule 15(a), the Supreme Court has held that:

> In the absence of any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

---

6 The Advisory Committee Notes for Rule 11 provide: These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party **will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position** or to acknowledge candidly that it does not currently have evidence to support a specified allegation. Under the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; **under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions.**

District courts have "limited discretion in denying leave to amend, and should grant a motion to amend unless there are substantial reasons to deny it." *Bowers v. U.S. Parole Comm'n, Warden*, 760 F.3d 1177, 1185 (11th Cir. 2014) (citation, internal quotation marks, and alterations omitted); *see also Kwik-Mart, inc. v. Ategrity Specialty Insurance Co.*, Case No: 6:23-cv-1814-PGB-NWH, 2025 WL 1884298, at * 2 (M.D. Fla. Jul. 8, 2025) ("to deny a motion to amend the complaint, there must be a substantial reason. . . "); *Solu-Med, Inc. v. Youngblood Skin Care Prods, LLC*, Case No. 19-60487-CIV-Altman/Hunt, 2020 WL 3487881, at *2 (S.D. Fla. June 4, 2020) (holding that the "justice so requires test" means that leave must be granted unless "there is a substantial reason to deny leave").

A "substantial reason to deny leave" may exist where there has been "(1) undue delay, (2) undue prejudice, or (3) futility of the amendment." *Solu-Med*, 2020 WL 3487781, at *2 (quotation marks and citations omitted). Those factors are not present here.

"Where a party seeks leave to amend after the deadline set in a court's scheduling order, however, the party first must demonstrate good cause for doing so under Federal Rule of Civil Procedure 16(b)." *State Farm Mut. Auto. Ins. Co. v. LaRocca*, No. 8:21-CV-2536-SCB-AEP, 2022 WL 19561969, at *2 (M.D. Fla. Oct. 26, 2022); *see also Kapral v. GEICO Indem. Co.*, No. 8:13-CV-2967-T-36EAJ, 2015 WL 12838320, at *3 (M.D. Fla. Mar. 3, 2015) ("If a motion to amend is filed after the deadline specified in the Court's scheduling order, the moving party must first establish 'good cause.'"). The good cause standard emphasizes the diligence of the party seeking the

amendment. *See Kapral*, 2015 WL 12838820, at *3. To establish good cause, the party "must demonstrate that the schedule cannot be met despite [his] diligence … seeking the extension."). *State Farm*, 2022 WL 19561969, at *2.

Here, RiverRock seeks a narrow amendment based upon information confirmed during discovery concerning the transmission of the Valuation reflected in the Board Deck. There is good cause as explained below in Section II.

## II. There is Good Cause to Allow RiverRock Leave to File its First Amended Complaint

Good cause exists because the proposed amendment is directed at a narrow issue that Abacus has elevated into a Rule 11 dispute, not because RiverRock recently discovered new facts.

RiverRock learned during discovery that Mr. Annino transmitted the Valuation to Abacus by email while the data room was being established. RiverRock did not view that fact as altering the substance of its breach-of-contract claim because the Confidentiality Agreement is not limited to information exchanged through a data room and because RiverRock's claim has always been based on Abacus's public disclosure of information relating to RiverRock and the Potential Acquisition. Federal Courts in Florida have made clear that not every false or unsupported allegation automatically warrants sanctions, particularly where the underlying claims remain viable (as they do here). *See In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 851 F. Supp. 2d 1299 (S.D. Fla. 2011); *Almeida v. Bennet Auto Supply, Inc.*, 335 F.R.D. 463 (S.D. Fla. 2020). Accordingly, because RiverRock had a good faith basis to support its claims,

and the method of transmittal did not change its underlying claim, RiverRock did not believe an amendment was necessary until such time as Abacus served it with a Rule 11 Letter and RiverRock elected to amend rather than litigate the issue.

Moreover, until depositions are taken, RiverRock cannot know with certainty the source of all information reflected in the first RiverRock-related slide of the Board Deck, the information exchanged between the parties during the diligence process, or the extent to which information reflected in the Board Deck overlapped with information contained in the data room. Because RiverRock knew that a data room had been established for the purpose of sharing Confidential Information in connection with the Potential Acquisition, RiverRock had a good-faith basis at the time it filed the Complaint to believe that information reflected in the Board Deck had been obtained through that diligence process.

Upon realizing that the Valuation had been transmitted by Mr. Annino via email, RiverRock raised the issue with Abacus in meet and confer correspondence and during a subsequent meet and confer phone call sought its agreement to an amendment clarifying the allegations. Abacus advised that it would likely oppose amendment because the deadline to amend pleadings had expired. RiverRock thereafter received Abacus's Rule 11 Safe Harbor Letter challenging the same allegations that RiverRock now seeks to clarify. These facts demonstrate diligence and provide the requisite good cause under Rule 16(b)(4), particularly where the proposed amendments are limited, non-dispositive, and based on information learned during discovery. RiverRock is not seeking to add new claims, new parties, or new theories of liability. Rather, RiverRock

seeks only to narrow certain allegations and eliminate a collateral dispute concerning issues that do not affect the viability of its breach-of-contract claim. The proposed amendment promotes judicial economy, addresses the concerns raised in Abacus's Rule 11 correspondence, and allows this case to proceed on the merits.

Rule 11's safe harbor provision expressly contemplates the withdrawal or correction of challenged allegations without the need for sanctions litigation. *See* Fed. R. Civ. P. 11(c)(2). A motion for sanctions may not be filed if the challenged paper is withdrawn or appropriately corrected within the safe harbor period. The rule is therefore designed to encourage parties to address alleged pleading deficiencies through amendment rather than through collateral sanctions proceedings.[7]

Consistent with that purpose, courts have recognized that a Rule 11 safe harbor notice may constitute good cause to permit amendment. In *Rodriguez v. Gem Recovery Sys., LLC*, the District of New Jersey held that there was "good cause for amendment because it was an appropriate response to the defendants having sent plaintiff a Rule 11 safe harbor notice." No. CV1816251KMJBC, 2021 WL 3030334, at *3 (D.N.J. July 19, 2021). The Court recognized that, "the purpose of the safe harbor notice is to

---

[7] Abacus' counsel has advised that Abacus intends to pursue its Rule 11 motion if this Motion for Leave is denied. RiverRock respectfully submits that its request for leave to amend is fully consistent with the purpose of Rule 11's safe harbor provision, which is to provide a party with an opportunity to withdraw or correct challenged allegations before sanctions litigation proceeds. The spirit of Rule 11 is to give the pleading party an opportunity to withdraw or correct the challenged claim or allegations, which is what RiverRock is attempting to do by way of this Motion. Granting leave to amend would further the purpose of the safe harbor provision by allowing the parties to focus on the merits of the dispute rather than litigating collateral Rule 11 issues.

'encourage a withdrawal of [an] offending pleading' so as to facilitate litigation on the merits rather than bog the Court down in Rule 11 motions. Plaintiff's compliance with the notice should be encouraged; it would not contribute to the orderly disposition of civil cases to deny leave to amend and thereby force parties to stand on pleadings which they know violate Rule 11." *Id*. The same reasoning applies here. While RiverRock denies that its pleading violates Rule 11, it would rather amend to address Defendant's concerns than to "bog the Court down in Rule 11 motions." *id*.

Again, RiverRock believed (and still believes) that it had a good faith basis for each of its allegations in the Complaint. RiverRock knows that there was a data room, documents were uploaded to the data room that upon information and belief contained Confidential Information, other Confidential Information was shared via email, Abacus and RiverRock had a Confidentiality Agreement which protected Confidential Information, and the Confidentiality Agreement was breached when Abacus posted the Board Deck with two pages relating to the Potential Acquisition on its website.

Whether the Confidential Information came from the data room or from an email is irrelevant to the claims set forth in RiverRock's pleading. What is relevant is that the parties were bound by a Confidentiality Agreement for Abacus to safeguard RiverRock's Confidential Information and such information was broadcasted for the world to see on its website. The method of transmission is merely a distraction.

Accordingly, the existence of the Rule 11 safe harbor notice, coupled with RiverRock's effort to narrow its allegations and avoid unnecessary sanctions litigation, constitutes good cause for the requested amendment.

## III. There Are No "Substantial Reasons" to Deny RiverRock Leave to Amend

### *a. There has been no undue delay, bad faith dilatory motive, or repeated failure to cure deficiencies.*

There is no evidence of bad faith, dilatory motive, or repeated failure to cure deficiencies. *Andrews v. Radiancy, Inc.*, No. 616CV1061ORL37GJK, 2017 WL 552873, at *2 (M.D. Fla. Feb. 10, 2017). "An inference of bad faith sufficient to deny leave to amend may arise when a movant fails to include known facts in an initial complaint as a "tactical maneuver[ ] to force the court to consider various theories seriatim." *Id.*

RiverRock has not unreasonably delayed and does not have any bad faith dilatory motives in bringing the instant motion. RiverRock does not seek to add new claims, new parties, or new theories of liability. Rather, the proposed amendment narrows certain factual allegations in response to issues raised by Abacus and information developed during discovery.

The substance of the allegations remains unchanged. RiverRock continues to allege that the parties entered into a Confidentiality Agreement, that Abacus received Confidential information in connection with the Potential Acquisition, and that Abacus breached the Confidentiality Agreement by publicly posting the Board Deck on its investor website. The amendment merely clarifies allegations concerning the

transmission of the Valuation and certain statements regarding payroll assumptions reflected in the Board Deck.

The Court has already recognized that the allegations regarding the data room appear primarily as background allegations. During the April 15, 2026 hearing, the Court observed:

> "And then I take it that [the data room] was the primary device that you use to facility the exchange of confidential information but not the only. I hear there's some dispute that there might have been an exchange of confidential information through email or otherwise, but I assume the data room was the primary means." *See* April 15, 2026 Tr. at P. 7:20-25.
>
> The Court further noted:
>
> "I've just read through your complaint, because that's obviously what governs, and you do mention the data room, but it looks like that's just background; right?" *Id*. at P. 19:11-14.

The proposed amendment is consistent with those observations. It narrows allegations concerning the way certain information was transmitted while leaving the substance of RiverRock's breach claim unchanged.

*b. Allowing RiverRock to file the proposed First Amended Complaint will not cause undue prejudice to Abacus.*

Nor will the proposed amendment prejudice Abacus. Courts may deny leave to amend as prejudicial when granting the motion would cause significant added expense and burden on the non-moving party, particularly when the amendment is sought well into the case. *See Jameson v. Arrow Co.*, 75 F.3d 1528, 1534-35 (11th Cir. 1996) (affirming denial of morion to amend after discovery had closed, and the non-moving party had filed two motions for summary judgment).

Here, no depositions have been taken, no summary judgment motions have been filed, and the amendment will not increase the cost and burden of discovery because it does not change the substance of the original Complaint. The same Board Deck remains at issue. The same disclosure (which Abacus has already admitted to) remains at issue. The same breach-of-contract claim remains at issue. The amendment seeks to clarify that RiverRock is no longer alleging that Abacus received the Valuation through the data room.

*c. The amendment would not be futile.*

The proposed amendment is not futile. In this District, "[l]eave to amend should not be denied on the ground of futility unless the proposed amendment is ***clearly insufficient or frivolous on its face***." *Solu-Med*, 2020 WL 3487781, at *3 (emphasis added). Stated differently, "denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." *See Aguilar v. United Floor Crew, Inc.*, Case No. 2014-civ-61605, 2014 WL 6751663, at *2 (S.D. Fla. Dec. 1, 2014) (compiling cases standing for the proposition that the futility threshold is akin to that of a motion to dismiss, which has an "exceedingly low" threshold). RiverRock's proposed amendment easily meets the "exceedingly low" motion to dismiss standard. *See id*.

The First Amended Complaint asserts the same cause of action for breach of the Confidentiality Agreement as the original Complaint. The substance of the First Amended Complaint is almost identical; it largely just clarifies that the valuation model included in the Board Deck was prepared by Mr. Annino and sent to Abacus—not that it came from the data room. This cannot be prejudicial to Abacus because by

their own admission, they were aware of this as early as August 1, 2025. Who prepared the document and how it was sent to Abacus has no bearing on the fact that Abacus published it in breach of its obligation to safeguard such information under the Confidentiality Agreement. Importantly, Abacus has never argued that RiverRock's breach-of-contract claim fails as a matter of law because the Valuation was transmitted by email rather than through the data room. Nor could it. The Confidentiality Agreement is not limited to information exchanged through a data room, and the proposed amendments do not alter RiverRock's theory that Abacus breached the Agreement by publicly disclosing information contained in the Board Deck.

Accordingly, the proposed First Amended Complaint would plainly survive a motion to dismiss and is not futile.

## CONCLUSION

For the foregoing reasons, RiverRock has demonstrated good cause and has further established that there are no substantial reasons to deny leave to amend. The proposed amendment is narrow, non-prejudicial, and directed toward clarifying certain factual allegations identified by Abacus in its Rule 11 Safe Harbor Letter. Accordingly, RiverRock respectfully requests that the Court grant this Motion for Leave to File its First Amended Complaint and authorize RiverRock to file the proposed pleading in the form attached as Exhibit 1, together with such other and further relief as the Court deems just and proper.

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned hereby certifies that Jennifer Junger, Esq. conferred in good faith with Abacus' counsel Jason Sternberg via phone on June 3, 2026 and via email on June 3, 4, and 5, 2026. Abacus' counsel confirmed that although "we continue to believe that the allegations at issue should not have been pled in the first instance, we are willing to resolve the Rule 11 matter as follows: we will not oppose a motion for leave to file an amended complaint, and we agree to hold our Rule 11 motion in abeyance pending the Court's ruling on that motion. If leave is granted and the amended complaint is filed, we will not pursue the Rule 11 motion. We do not agree, however, that local practice or the federal rules permit amendment by interlineation. The appropriate vehicle is a motion for leave to amend, which we will not oppose (though for the avoidance of doubt, we reserve all rights with respect to the amended complaint, including as to its legal sufficiency). Please let us know how you would like to proceed."

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0535

By: *<u>/s/ Jennifer Junger</u>*
A. SHEILA ORETSKY
*Lead Counsel*
Florida Bar No. 31365
sheila.oretsky@gtlaw.com
raquel.acuna@gtlaw.com
JENNIFER JUNGER
Florida Bar No. 125853
jungerj@gtlaw.com
fernandezfe@gtlaw.com

*Attorneys for Plaintiff Renegade Capital GP, LLC d/b/a RiverRock Funds, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2026, I electronically served the foregoing on all counsel of record identified on the below Service List by Registered E-mail.

Jason Sternberg, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
2601 S Bayshore Dr., Suite 1500
Miami, FL 33133
305-402-4880
jasonsternberg@quinnemanuel.com
alexzuckerman@quinnemanuel.com
kathleenmessinger@quinnemanuel.com
rebeccajin@quinnemanuel.com

*Attorneys for Abacus Life, Inc. n/k/a Abacus Global Management, Inc.*

By: */s/ Jennifer Junger*
JENNIFER JUNGER