**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| RENEGADE CAPITAL GP, LLC d/b/a RIVERROCK FUNDS LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ABACUS LIFE, INC. n/k/a ABACUS GLOBAL MANAGEMENT, INC., a Delaware Corporation,<br><br>Defendant. | Case No.: 6:25-cv-00424-CEM-NWH |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1
BACKGROUND .......... 5
A. RiverRock's Troubled Financial History .......... 5
B. Abacus's Discussions with RiverRock .......... 9
C. The Board Deck .......... 10
D. RiverRock's Damages Theories. .......... 11
LEGAL STANDARD .......... 12
ARGUMENT .......... 15
I. RIVERROCK'S ALLEGED DAMAGES ARE NOT REASONABLY ASCERTAINABLE. .......... 15
A. The new funds damages are not ascertainable. .......... 16
B. Harris's damages model impermissibly includes the millions of dollars in employee salaries RiverRock would not and did not pay as a result of employee departures. .......... 19
C. The lost sale damages are uncertain. .......... 20
II. RIVERROCK FAILS TO DEMONSTRATE CAUSATION .......... 21
CONCLUSION .......... 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*600 Cleveland, LLC v. Bank of Am., N.A.*,
2026 WL 183553 (M.D. Fla. Jan. 23, 2026) ........ 22

*Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*,
432 F. Supp. 2d 1319 (S.D. Fla. 2006), *aff'd*, 294 F. App'x 501 (11th Cir. 2008) ........ 13

*Brevard Cnty. Fair Ass'n, Inc. v. Cocoa Expo, Inc.*,
832 So. 2d 147 (Fla. Dist. Ct. App. 2002) ........ 14, 17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........ 13

*Flying Fish Bikes, Inc. v. Giant Bicycle, Inc.*,
181 F. Supp. 3d 957 (M.D. Fla. 2016) ........ 13, 16, 22

*ICMfg & Assocs., Inc. v. Bare Bd. Grp., Inc.*,
238 So. 3d 326 (Fla. Dist. Ct. App. 2017) ........ 13

*Kane v. Shearson Lehman Hutton, Inc.*,
916 F.2d 643 (11th Cir. 1990) ........ 16

*Marc E. Bosem MD PA v. Sentinel Ins. Co., Ltd.*,
2022 WL 467008 (S.D. Fla. Jan. 21, 2022) ........ 14

*Mut. of Omaha Mortg., Inc. v. Waterstone Mortg. Corp.*,
2024 WL 1346980 (M.D. Fla. Mar. 29, 2024) ........ 16, 18

*Nebula Glass Int'l, Inc. v. Reichhold, Inc.*,
454 F.3d 1203 (11th Cir. 2006) ........ 14

*In re Sherwood Invs. Overseas Ltd., Inc.*,
2015 WL 4486470 (Bankr. M.D. Fla. July 22, 2015) ........ 14, 17

*Sostchin v. Doll Enters., Inc.*,
847 So. 2d 1123 (Fla. Dist. Ct. App. 2003) ........ 14, 19, 20

*Stensby v. Effjohn Oy Ab*,
806 So. 2d 542 (Fla. Dist. Ct. App. 2001) .............................................. 16, 18

*Sun Ins. Mktg. Network, Inc. v. AIG Life Ins. Co.*,
254 F. Supp. 2d 1239 (M.D. Fla. 2003) ........................................................ 21

*Tonkyro v. Sec'y, Dep't of Veterans Affs.*,
2024 WL 2846356 (M.D. Fla. June 5, 2024) ................................................ 13

*White Constr. Co. v. Martin Marietta Materials, Inc.*,
633 F. Supp. 2d 1302 (M.D. Fla. 2009) ........................................................ 20

*X-Ray Diagnostic & Ultrasound Consultants Ltd. v. Gen. Elec. Co.*, 2025 WL 299451 (S.D. Fla. Jan. 26, 2025)........................................... 22

**<u>Other Authorities</u>**

Fed. R. Civ. P. 56 .......................................................................................... 1, 12

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Abacus Life, Inc. n/k/a Abacus Global Management, Inc. ("Abacus" or "Defendant"), through its undersigned counsel, files this Motion for Summary Judgment ("Motion"). In support of its Motion, Defendant states as follows:

**PRELIMINARY STATEMENT**

Renegade Capital GP, LLC d/b/a RiverRock Funds LLC ("RiverRock" or "Plaintiff") seeks $13.6 million in lost profits for harm to a business that, by its own admission "[redacted]." In 2023, RiverRock—a small, struggling investment manager—was shopping itself for sale, and Abacus was one of several parties it approached about a potential acquisition. The two exchanged preliminary information but never signed a letter of intent and never closed a deal. While those talks were ongoing, Abacus inadvertently posted two slides from an internal board deck to a public website, and took them down within 36 hours. RiverRock now blames that fleeting mistake for the collapse of its business.

The Court should grant summary judgment because RiverRock's damages fail as a matter of law. Its entire theory rests on speculation piled on speculation: built on assumptions about investment funds that never opened, capital that was never raised, and investors who never committed. Rather than establishing RiverRock's future profits with reasonable certainty as required under Florida law, RiverRock's expert simply assumed them—

projecting a decade of profits for a company that never earned a penny and attributing "[redacted]" of the harm at issue to Abacus rather than to RiverRock's own long-running failures. On this record, no reasonable jury could award lost profits, and summary judgment is warranted.

RiverRock had a long history of overpromising and underdelivering. As an alternative investment manager, its success was contingent on its ability to raise capital and to generate a positive return for its investors. But RiverRock routinely failed at both. RiverRock [redacted], and with the exception of a single outlier fund in 2016, never raised more than $[redacted]. Pl.'s Expert Disclosure (Ex. 1), Ex. A ("Harris Report") at 9. And after touting potential double-digit returns, RiverRock consistently disappointed its investors. Def.'s Expert Disclosure ("Farber Report") (Ex. 2) ¶ 36 (reporting maximum IRR of [redacted]%, and [redacted] with respect to Funds I, III, IV, and V).

By September 2023, two of RiverRock's funds (Funds VI and VII) were performing so poorly that investors "[redacted]" that the "[redacted]" Ex. 3 (RENEGADE_001376) at RENEGADE_001376. Unsurprisingly, this slump in performance made it harder for RiverRock to solicit new capital investments. Against this backdrop, its new fund (Fund VIII) [redacted] despite a lofty goal of raising $[redacted]. Harris

Report at 8. Another, slightly different new fund (Longevity Fund) did not fare much better—raising only $[redacted] of its $[redacted]. *Id.* at 11 n.5. In light of this abysmal performance and RiverRock's bleak future, RiverRock's then-CEO Anthony Annino—whom RiverRock recruited because of his anchor investments in Funds VI and VII and fundraising ability—told RiverRock's Chairman Gabe Siegel in June 2023 that "[redacted]" Ex. 4 (RENEGADE_016218); Deposition Transcript of Anthony Annino ("Annino Dep. Tr.") (Ex. 5) at 74:2-75:1. That is, Annino—the man Siegel hired to save RiverRock—had no intention of staying well before November 2023. So, faced with a failing business with no fundraising prospects, a CEO who was readying to jump ship, and a long history of inadequate returns, Siegel decided to sell his "[redacted]" on or around September 2023. *See* Ex. 6 (RENEGADE_030896) at RENEGADE_030899.

RiverRock's Amended Complaint seeks to hold Abacus liable for problems that are endemic to RiverRock and that started and continued well before any alleged breach by Abacus. On RiverRock's telling, Abacus's inadvertent disclosure of RiverRock's purported valuation and discussions pertaining to a potential acquisition caused RiverRock to implode. According to RiverRock, 2 pages of a 38-slide deck—which primarily contained Abacus's financial forecasts—caused half of RiverRock's workforce to quit, dried up the company's fundraising, and destroyed RiverRock's future business. *See* ECF

No. 79 (the "Amended Complaint") at ¶¶ 56-59; Ex. 7 (ABACUS_0001192). According to RiverRock's expert William Harris, this harm caused RiverRock to lose $13.6 million of incremental profits that it would have collected from managing two funds that never launched, and which had no fundraising prospects: Fund VIII and the Longevity Fund. Harris Report at 4.

RiverRock's narrative is a farce. RiverRock's business was failing even before the alleged breach, RiverRock was never going to generate the $13.6 million in profit claimed by its expert—nowhere near that. In fact, two months before the alleged breach, Annino noted [redacted]"—***not*** Abacus—"[redacted]" Ex. 8 (AA_000843) at AA_000844. Faced with this reality, RiverRock now hopes to achieve through litigation what it could not in the market: a profit.

RiverRock advances two theories as to why its collapse is all Abacus's fault. First, RiverRock claims that it would have opened two new funds—a Longevity Fund and Fund VIII—that would have raised hundreds of millions of dollars and resulted in management and acquisition fees paid to RiverRock. Harris Report at 7 & n.3. But, as mentioned, RiverRock has failed to dispute the material facts that: (a) RiverRock failed to raise any capital as to Fund VIII; (b) RiverRock was a loss-generating business—not a profit-maximizing

one; and (c) RiverRock's employees were set to leave the company long before the inadvertent disclosure at issue here.[1]

These points, unrebutted by the record (including RiverRock's expert report), leave no genuine dispute of material fact: RiverRock cannot establish causation or reasonably ascertainable damages, each of which Florida law requires. Its damages are untethered from the record and rest on pure speculation, and it cannot show that Abacus's brief disclosure—rather than RiverRock's own long-running failures—caused its collapse. No reasonable factfinder could award RiverRock lost profits on this record, much less the $13.6 million windfall it seeks.[2]

## BACKGROUND

### A. RiverRock's Troubled Financial History

RiverRock is an alternative investment manager operating in the secondary market for life insurance policies. Am. Compl. ¶ 12. Abacus, on the other hand, is a large, publicly traded life settlements company with

---

[1] RiverRock has not articulated a theory of damages based on the loss of enterprise value. As explained below, such a theory would be improper, anyway.

[2] In filing this Motion, Abacus does not concede liability. On the contrary, if this case were to proceed to trial, Abacus would prove that the Confidentiality Agreement does not apply to the complained-of disclosure. However, because interpretation of the Confidentiality Agreement involves disputed issues of material fact, Abacus does not move for summary judgment with respect to liability.

approximately 26% market share. Harris Report at 10. With operations in nearly every state, it is a significantly larger player in the life settlements industry than RiverRock ever was. *Id.* Unlike Abacus, RiverRock struggled to raise funds, to deploy capital, and to manage its investments. Those difficulties, which it now attributes to Abacus, long predate the alleged breach at issue here.

[redacted].

[redacted]. Indeed, RiverRock's first three funds were so poor in this regard that its own expert excluded them from his analysis. Harris Report at 9. Nor could he say how long it took RiverRock to raise money for these funds. Deposition Transcript of William Harris ("Harris Dep. Tr.") (Ex. 9) at 106:12-17 ([redacted]). For example, for RiverRock's second and third funds (Fund II and Fund III), RiverRock targeted a combined $[redacted] capital raise—$[redacted] for Fund II and $[redacted] for Fund III—but only raised $[redacted] in total. Harris Report at 9. This pattern never changed; RiverRock never once [redacted] with respect to any of its funds. *Id.*; Harris Dep. Tr. at 70:10-11 ([redacted]). RiverRock has not substantiated the "[redacted]" that it uses to estimate its fundraising. Farber Report ¶ 70.

***RiverRock mismanaged the capital it raised.***

What money it did raise, RiverRock mismanaged. As its expert admits, "[redacted]" Harris Dep. Tr. at 12:4-6. As for Fund VI, it "[redacted]" internal rate of return (hereinafter, "IRR"), *id.* at 47:15-19, and saw its projected IRR collapse from [redacted]% in 2018 to [redacted]% in 2023. *Id.* at 73:21-74:8. But even this projected IRR was illusory: Fund VI's [redacted]" was [redacted]% in 2023. Ex. 8 at AA_8000845. Recognizing that the older RiverRock funds raised less capital, RiverRock's expert relies ***solely*** on Funds IV-VI to assess RiverRock's damages. *Id.* at 27:10-28:15; Harris Report at 9. Despite Fund VII fundraising being closest in time to the Longevity Fund and Fund VIII's fundraising attempts, Harris unilaterally dismissed Fund VII's demonstrably lower fundraising because the COVID-19 pandemic purportedly "[redacted]" Fund VII's fundraising performance. Harris Dep. Tr. at 28:10-21; Harris Report at 9.[3] Harris's sole support for excluding Fund VII because of COVID-19 comes from an *Abacus* 10-K published *five years* ***after*** Fund VII launched. Harris Report at 9-10; Harris Dep. Tr. at 31:18-32:18. This is despite the fact that Abacus is a completely different company than RiverRock, with a much larger market

[3] RiverRock's contemporaneous emails make no reference to COVID-19 in explaining Fund VII's performance. *See generally* Harris Dep. Tr. at 30:6-31:1.

share and much more established record in the life settlements industry. *See* Harris Report at 9-10 ([redacted]).

***By 2023, RiverRock was insolvent in all but name.***

By 2023, the situation had not improved. RiverRock launched the Longevity Fund on May 31, 2023,[4] but raised only about $[redacted] of its $[redacted] goal by September 2023. Harris Dep. Tr. at 140:18-19. Around the same time, RiverRock was marketing Fund VIII, which had been seeking investment since as early as October 2022. *Id.* at 139:15-18. Again, despite a lofty goal of $[redacted], Fund VIII [redacted] whatsoever between October 2022 and November 2023. *Id.*

RiverRock's own "[redacted]" analysis, prepared by CEO Anthony Annino and dated September 2023, underscored these issues. In it, he acknowledged that "[redacted]" Ex. 8 at AA_000844; *see also* Annino Dep. Tr. at 36:4-6 ([redacted]). The same slideshow went on to explain that Fund V's poor performance presented a material "[redacted]" Ex. 8 at AA_000844, and that Fund VI had an "[redacted]" *Id.* at AA_000845. This,

4 The Harris report provides two launch dates for the Longevity Fund—February 2023 and May 31, 2023. *Compare* Harris Report at 7 ("[redacted]") *with* Harris Report at 11 (table listing "[redacted]).

combined with the interest rate environment, reduced return expectations and made it [redacted] *Id.* at AA_000846. To make matters worse, as RiverRock's CEO admitted, there were no investors interested in Fund VIII. *See* Annino Dep. Tr. at 61:11-20.

All told, RiverRock "[redacted]" before the alleged breach. Harris Dep. Tr. at 17:15-18. Perhaps for this reason, RiverRock began analyzing [redacted]" as early as September 2023. Ex. 8 at AA_000849. In short, RiverRock struggled to raise funds and turn a profit across seven funds and fourteen years—long before Abacus entered the picture.

**B. Abacus's Discussions with RiverRock**

Amid significant headwinds, RiverRock began, in 2023, to look for an exit. As RiverRock's own materials acknowledge, it was in a "[redacted]" *Id.* at AA_000851. RiverRock began exploring "[redacted]" in the "[redacted]" including a potential sale or strategic partnership. Annino Dep. Tr. at 72:20-73:5. Abacus was one of several transaction partners that RiverRock reached out to in the fall of 2023, including [redacted]. *See id.* at 142:17-20; 143:6-11; 12:2-7.

As one such counterparty, Abacus signed a confidentiality agreement with RiverRock in September 2023, allowing for the exchange of confidential information for Abacus to evaluate RiverRock's business. *See generally* Am.

Compl., Ex. A. Even so, the discussions between Abacus and RiverRock never advanced beyond a preliminary stage. Annino Dep. Tr. at 119:23-24 (acknowledging that [redacted]); *see also* Deposition Transcript of Jay Jackson ("Jackson Dep. Tr.") (Ex. 10) at 87:6-12. As RiverRock's CEO acknowledged, Abacus was never under any obligation to purchase RiverRock. *See* Annino Dep. Tr. at 204:23-205:8. And Abacus's CEO shared this understanding, noting that [redacted]" Jackson Dep. Tr. at 167:16-18. After some preliminary negotiations, RiverRock shared a virtual data room with Abacus. Annino Dep. Tr. at 79:14-17. Abacus and RiverRock exchanged successive drafts of a letter of intent, but the price terms fluctuated and no version was ever finalized and signed. Annino Dep. Tr. at 117:25-118:2; *see id.* at 124:8-12 (describing $[redacted] purchase price); *id.* at 213:2-5 (acknowledging that [redacted]).

**C. The Board Deck**

On October 14, 2023, Annino emailed Jackson, attaching a RiverRock "valuation model" that he had prepared. Annino Dep. at 95:11-96:11. The model included forecasted revenues and expenses, among other information. Ex. 11 (ABACUS_0000973). On October 31, 2023, Annino sent a materially identical model to [redacted]. Annino Dep. Tr. at 109:15-110:9. Abacus, in turn, used the information that Annino had supplied. Jackson placed the slide

in a deck he had prepared "for discussion purposes" with Abacus's board. Jackson Dep. Tr. at 197:2-9.

At the same time, Abacus was preparing for its quarterly earnings. To that end, two slide decks were prepared—an internal "board deck" for the board of directors' review and a public deck for the shareholders generally. Jackson Dep. Tr. at 238:12-239:6. After the Board met on November 9, 2023, Abacus's Vice-President of Marketing sent the board deck to Abacus's investor-relations firm. *Id.* at 254:3-10. All parties agree that "[redacted]" Annino Dep. Tr. at 152:8-14; Jackson Dep. Tr. at 296:6-10. Though the board presentation was posted, it was removed within 36 hours. Am. Compl. ¶ 35. Nonetheless, RiverRock claims approximately $13.6 million in damages from the upload.

**D. RiverRock's Damages Theories.**

RiverRock's damages expert, William E. Harris, admits that RiverRock "[redacted]" before the alleged breach. Harris Dep. Tr. at 17:15-18. Nonetheless, Mr. Harris has assessed RiverRock's lost profits stemming from the breach at $13,645,968. Harris Report at 4. Harris arrived at that figure by adding two figures together: projected earnings from two funds RiverRock hoped to launch at some undefined point in the future: the Longevity Fund and Fund VIII. Harris Report at 11. Harris assumes for the purposes of his analysis that "[redacted]" of the damages alleged were caused by Abacus. Harris

Dep. Tr. at 52:8-19; *id.* at 54:8-16 ("[redacted]"). Averaging the fundraising of its three most successful funds (two of which targeted a capital raise at or below $[redacted]), RiverRock's damages analysis assumes that it would have raised [redacted]% of its targeted capital raise for Fund VIII and the Longevity Fund, for a total exceeding $[redacted]—just under the $[redacted] it had raised in total across seven funds since 2009. Harris Report at 9 (sum of [redacted] [redacted] [redacted] column equals $[redacted]), 11 (sum of [redacted] [redacted] [redacted]" column equals $[redacted]); Farber Report ¶ 93.

Harris elected to analyze lost profits as opposed to damages to RiverRock as a business measured in the form of the price RiverRock could have achieved in a sale because "[redacted] and that without mutual agreement, it is inappropriate to draw "[redacted]" from potential sales of the business. Harris Dep. Tr. at 23:13-22; *id.* at 22:19-24 (characterizing valuation based on non-final offers as [redacted]").

## LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 2024 WL 2846356, at *4 (M.D. Fla. June 5, 2024). "The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact." *Id.* Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit. *Id.* at *5. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Where the nonmoving party fails to show an "essential element" of its claim, summary judgment is appropriate. *Id.* at 323.

To recover for a breach of contract under Florida law, a party must offer proof of (1) causation and (2) reasonably ascertainable damages. *Flying Fish Bikes, Inc. v. Giant Bicycle, Inc.*, 181 F. Supp. 3d 957, 967 (M.D. Fla. 2016). Courts evaluating damages must be satisfied that the measure of damages is not "the result of speculation or conjecture." *ICMfg & Assocs., Inc. v. Bare Bd. Grp., Inc.*, 238 So. 3d 326, 336 (Fla. Dist. Ct. App. 2017) (internal quotation marks omitted). A plaintiff seeking the "disfavored . . . relief" of lost profits must show that their damages calculations are "not mere best case scenario predictions." *Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp.

2d 1319, 1339 (S.D. Fla. 2006) (internal quotation marks omitted), *aff'd*, 294 F. App'x 501 (11th Cir. 2008).

To recover damages for lost profits, plaintiffs must provide a "reasonable yardstick by which to estimate . . . damages." *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1217 (11th Cir. 2006). If damages are too speculative, "then summary judgment for the defendant is appropriate." *In re Sherwood Invs. Overseas Ltd., Inc.*, 2015 WL 4486470, at *27 (Bankr. M.D. Fla. July 22, 2015); *Marc E. Bosem MD PA v. Sentinel Ins. Co., Ltd.*, 2022 WL 467008, at *4 (S.D. Fla. Jan. 21, 2022) (same). "Further, a condition precedent to recovery is proof by competent substantial evidence that the business has earned profits for a reasonable time before the occurrence of the wrong." *Brevard Cnty. Fair Ass'n, Inc. v. Cocoa Expo, Inc.*, 832 So. 2d 147, 153 (Fla. Dist. Ct. App. 2002). Damages based on lost profits must be based on net, rather than gross, profits, and must account for ordinary expenses, such as employee salaries. *Sostchin v. Doll Enters., Inc.*, 847 So. 2d 1123, 1125 (Fla. Dist. Ct. App. 2003). RiverRock's measure of damages is impermissibly speculative.

## ARGUMENT

### I. RIVERROCK'S ALLEGED DAMAGES ARE NOT REASONABLY ASCERTAINABLE.

RiverRock puts forward two theories of damages. First, RiverRock claims that it would have earned profits from funds that would have been opened (the "new funds" theory). The new funds theory relies on a fundamentally inapt comparison—that a serially unprofitable business with no prospects would suddenly raise money, successfully invest it, and derive profit from management and acquisition fees. Second, RiverRock alleges damages from the departure of its employees. Am. Compl. ¶¶ 56-59. But those damages have not been established in RiverRock's expert report, and there is no support for them elsewhere in the record, rendering them impermissibly speculative.

To the extent that RiverRock claims that absent the disclosure, it would have been acquired by Abacus, thereby earning the purchase price suggested by the various draft letters of intent (the "lost sale" theory), that theory must also fail. Abacus and RiverRock never agreed on terms for a letter of intent, let alone an acquisition, rendering any possible damages related to a sale entirely speculative. *See* Annino Dep. Tr. at 140:21-25; *see also* Jackson Dep. Tr. at 23:24-24:8 ("[redacted].").

### A. The new funds damages are not ascertainable.

RiverRock claims that the alleged breach "prevented RiverRock from raising the capital necessary to continue successfully operating its business." Am. Compl. ¶ 62. Florida law treats this as a claim for lost profits. *Kane v. Shearson Lehman Hutton, Inc.*, 916 F.2d 643, 647 (11th Cir. 1990) (characterizing damages based on alternative investment scenario as claim for lost profits). Lost profits must be established with reasonable certainty, and must be a natural consequence of the wrong alleged. *Flying Fish*, 181 F. Supp. 3d at 967. Where, as here, a lost profits claim turns on a series of contingent events, damages are too speculative to be recovered under Florida law. *Stensby v. Effjohn Oy Ab*, 806 So. 2d 542, 544 (Fla. Dist. Ct. App. 2001). Florida courts also "carefully scrutinize the time duration component of future lost profit damages models," with an eye toward an "objective factual basis for the time duration component." *Mut. of Omaha Mortg., Inc. v. Waterstone Mortg. Corp.*, 2024 WL 1346980, at *4 (M.D. Fla. Mar. 29, 2024).

The record establishes that RiverRock's proposed $13.6 million valuation is speculative. As RiverRock's own expert concedes, Fund VIII "[redacted]." Harris Dep. Tr. at 19:7-8. Not only that, but Harris identified no committed investor, *id.* at 105:18-20, no capital raised, *id.* at 147:1-4, and no concrete basis for the projected capital raise for Fund VIII, *id.* at 71:6-10 (calling it an "[redacted]"). In fact, the capital raise for Fund VIII is an average of

RiverRock's prior fundraising, rather than a particularized assessment of RiverRock's likely performance. These assumptions are directly at odds with RiverRock's historical returns. As Harris himself acknowledged, RiverRock's first five funds (Funds I-V), "[redacted]" *id.* at 12:6, and Fund VI "[redacted]" *Id.* at 47:19. And Fund VIII failed to generate investor interest, going more than one year without raising any capital whatsoever. *Id.* at 139:15-18. Nonetheless, RiverRock's damages are projected out approximately ten years from the date of the alleged breach, and RiverRock's expert provides no basis for this timeline, perhaps assuming that the ten-year timeline for the funds is sufficient to support his calculations. *Id.* at 80:18-24; *see id.* at 90:2-10 (describing the [redacted]).

These admissions are fatal to RiverRock's claim. RiverRock's model fails to provide justifications sufficient to support its assumptions. This is inexcusable—doubly so when these "assumptions" would have a jury impute profit to an otherwise-unprofitable business. After all, proof of profits is a "condition precedent" to recovering lost profits. *Brevard Cnty.*, 832 So. 2d at 153. RiverRock's claim that it would have generated profits is no less speculative than the claims that courts routinely reject as "self-serving, after-the-fact" statements. *Sherwood*, 2015 WL 4486470, at *30. RiverRock has

provided no basis for its projected damages over the next ten years, with its expert seeming to base that projection entirely on the standard life cycle of a fund. But this is insufficient. A company like RiverRock, which was underperforming and failed to raise funds at every turn, cannot collect damages for ten years absent some "objective factual basis" to believe that it would remain a going concern for that long. *See Mut. of Omaha*, 2024 WL 1346980, at *4.

*Stensby* is instructive. There, a fundraiser sued for breach of a contract under which he was to receive fifteen percent of a company's equity if he raised the capital to finance it. *Stensby*, 806 So. 2d at 543. A jury awarded him $6 million, based on his share of the company's profits over ten years. *Id.* at 544. On appeal, the Third District reversed, determining that the "uncontroverted evidence" indicated that the company had a "woeful[] financial record," and that there was no likelihood of profits during the relevant time period. *Id.* The court determined that this theory fell "far short" of even "the realm of the speculative." *Id.*

So too here. RiverRock's management fees purport to be projected from a historical record of loss. RiverRock "[redacted]" Harris Dep. Tr. at 17:15-18, [redacted], Harris Report at 9, and consistently underperformed. As in *Stensby*, RiverRock's only track record is

one of woeful losses, so no reasonable jury could fix RiverRock's lost profits with the certainty that Florida law demands. Accordingly, Abacus is entitled to summary judgment.

### B. Harris's damages model impermissibly includes the millions of dollars in employee salaries RiverRock would not and did not pay as a result of employee departures.

RiverRock also contends that the departure of its employees is itself damaging. Am. Compl. ¶¶ 56-59. That theory must also fail. RiverRock's damages model does not address these departures at all, and it wrongly assumes that "[redacted]" Farber Report ¶ 84. In other words, RiverRock's damages model assumes RiverRock would have continued to pay the departed employees' salaries during the damages period. *Id.* That assumption cannot be reconciled with RiverRock's theory. If the departures were caused by Abacus's alleged wrongdoing, then salary outlays would fall.

This is significant. Salaries and wages were "[redacted]" and actually *did* fall by almost $[redacted] between October 2023 and June 2024. Farber Report ¶ 116 (noting fall in wages from $[redacted] to $[redacted]). This "[redacted]" thus "[redacted]" *Id.* ¶ 118. This irregular treatment mirrors the faulty damages calculation at issue in *Sostchin*, 847 So. 2d at 1125. There, the court

invalidated a lost profits award as "speculative," because it was based on gross—rather than net—profits. *Id.* There, as here, an expert accountant failed to include "officer compensation as part of the corporation's expenses." *Id.* Holding that withholding for compensation was "required" by Florida law, the court went on to rule that the error rendered the damages "highly speculative and conjectural." *Id.* at 1126-27. RiverRock's expert report is no different. It fails to account for the changing outlays that would go to directors' compensation, and it fundamentally fails to provide an evidentiary basis from which a jury could determine damages based on employee departures. Accordingly, such a claim must fail under Florida law.

**C. The lost sale damages are uncertain.**

To the extent that RiverRock rests on purported damages from its failure to sell its business, that theory must also fail. The record reflects no accurate way of determining the value of RiverRock's business. The strongest available evidence in the record to this end is a series of letters of intent ("LOIs") that were never finalized. But an LOI is "an agreement to agree in the future" that "falls far short of an enforceable contract," much less a concrete valuation for a business. *White Constr. Co. v. Martin Marietta Materials, Inc.*, 633 F. Supp. 2d 1302, 1320 (M.D. Fla. 2009). This is especially true where, as here, [redacted]. Jackson Dep. Tr. 23:24-24:8.

Further, RiverRock's own witnesses confirm that no sale was near. Its CEO admitted that [redacted] Annino Dep. Tr. at 119:23-24. Abacus's board retained its discretion to "[redacted]" to a deal with RiverRock, *id.* at 119:12-14, and Annino could not identify what price Abacus would pay in a deal with RiverRock. *Id.* at 118:20-25. A hypothetical price based on incomplete negotiations that never became "imminent" is exactly the type of speculative lost profits award that Florida law forbids. *See Sun Ins. Mktg. Network, Inc. v. AIG Life Ins. Co.*, 254 F. Supp. 2d 1239, 1247 (M.D. Fla. 2003).

As *Sun Insurance* explains, "contingencies" that could terminate the duration of a business render damages "too speculative." *Id.* at 1248. In other words, profit projections based on assumptions that "might never[] come to pass" are inherently speculative and disallowed under Florida law. *Id.* at 1249. Those exact circumstances are present here: The letters of intent were never finalized, Annino Dep. Tr. at 117:25-118:2, there was no purchase on the horizon for RiverRock, *id.* at 119:23-24; Abacus was under no obligation to purchase it, *id.* at 204:23-205:8; and due diligence never went forward. Jackson Dep. Tr. at 23:24-24:8.

## II. <u>RIVERROCK FAILS TO DEMONSTRATE CAUSATION</u>

Furthermore, RiverRock cannot show that its damages were caused by Abacus's inadvertent disclosure. Under Florida law, contract damages are only

recoverable where they are "a direct result of the defendant's actions." *Flying Fish*, 181 F. Supp. 3d at 967 (citation omitted). Here, Plaintiff has failed to prove any causal link—and cannot prove any causal link—to its claimed damages. Summary judgment is therefore appropriate. *See 600 Cleveland, LLC v. Bank of Am., N.A.*, 2026 WL 183553, at *7 (M.D. Fla. Jan. 23, 2026) (granting summary judgment where plaintiff presented "no evidence at all" of a "genuine dispute of material fact regarding causation").

RiverRock's own expert did not analyze causation, instead assuming that [redacted] and further assuming that "[redacted]" of RiverRock's damages were traceable to Abacus. Harris Dep. Tr. at 52:8-19; *id.* at 54:8-16. But the record shows that this is plainly not so for each of RiverRock's damages theories.

Before the alleged breach, RiverRock "[redacted]," *id.* at 17:15-18, RiverRock's employees were actively seeking employment elsewhere, Farber Report ¶ 54(c); Annino Dep. Tr. at 13:13-20; and no investors were coming forward to partner with RiverRock, much less purchase it outright. Annino Dep. Tr. at 119:23-24. Because RiverRock bears the burden of proof, and offers only a cursory "[redacted]" of causation, *see* Harris Dep. Tr. at 54:8-16, summary judgment is warranted. Without expert testimony on causation, Plaintiff may not be able to show causation at all. *X-Ray Diagnostic & Ultrasound Consultants Ltd. v. Gen. Elec. Co.*, 2025 WL 299451, at *2 n.1

(S.D. Fla. Jan. 26, 2025) ("[A]t trial, it is Plaintiff's burden to prove causation and damages—a tall, but not necessarily impossible, feat without expert testimony."). Thus, independent of the speculative nature of RiverRock's damages explained above, RiverRock's claim should fail for want of causation.

## CONCLUSION

For the foregoing reasons, Abacus respectfully requests the Court enter summary judgment in its favor.

DATED: September 1, 2026

*/s/ Alex Zuckerman*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Alex Zuckerman (*pro hac vice*)
alexzuckerman@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, NY 10016
(212) 849-7000

Jason D. Sternberg (Fla. Bar No. 72887)
jasonsternberg@quinnemanuel.com
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
(305) 402-4880

Kathleen S. Messinger (*pro hac vice*)
kathleenmessinger@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

*Attorneys for Defendant*
*Abacus Life, Inc. n/k/a Abacus Global Management, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 1, 2026, a true and correct copy of the foregoing document was electronically served via the CM/ECF system on all parties authorized to accept service by CM/ECF.

*/s/ Alex Zuckerman*
Alex Zuckerman