**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

RENEGADE CAPITAL GP, LLC d/b/a RIVERROCK FUNDS, LLC, a Delaware limited liability company,

Plaintiff,

v. Case No. 6:25-cv-00424-CEM-NWH

ABACUS LIFE, INC. n/k/a ABACUS GLOBAL MANAGEMENT, INC., a Delaware Corporation,

Defendant.

# PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY[1]

Plaintiff Renegade Capital GP, LLC d/b/a RiverRock Funds, LLC ("RiverRock" or "Plaintiff"), pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, hereby files its Motion for Partial Summary Judgment as to Liability on Count I[2] against Defendant, Abacus Life, Inc. n/k/a Abacus Global Management, Inc. ("Abacus" or "Defendant") (collectively, "Parties"). In support thereof, Plaintiff states:

---

[1] Prior to the filing of this Motion for Summary Judgment (the "Motion"), Plaintiff filed a Motion to Seal [D.E. 112], which attached this Motion in unredacted form. Plaintiff is now filing a redacted version of this Motion for Summary Judgment in order to comply with the Court's applicable filing deadline.

[2] Plaintiff asserts only one count in its Amended Complaint for Breach of Contract. [D.E. 079].

## INTRODUCTION

This case presents a straightforward breach of contract. The Parties entered into a written Confidentiality Agreement (the "Agreement") to facilitate "[redacted] ("Potential Acquisition").[3] [redacted].

Abacus agreed to "[redacted]" of [redacted]. (Emphasis added). Nonetheless, Abacus admits it caused an internal Board Deck containing RiverRock's Confidential Information to be posted on its public investor website. Because the undisputed facts establish that Abacus publicly disclosed RiverRock's Confidential Information, RiverRock is entitled to partial summary judgment as to Abacus's liability.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. The Life-Settlement Industry and the Parties' Businesses

---

[3] Renegade Capital GP, LLC does business as RiverRock Funds LLC and is the party identified in the Agreement. When a contract is executed by an entity's fictitious name, the contract is valid against the legal entity. *Premier Finishes, Inc. v. Maggirias*, 130 So. 3d 238, 241 (Fla. 2d DCA 2013) ("A contract entered into under a fictitious name is valid and enforceable . . . the real entity that uses the fictitious name when entering into the contract is the actual party to the contract").

[4] Any Capitalized terms not defined herein have the same meaning as defined in the Agreement.

1. RiverRock was founded in 2007 as a specialized asset manager focused on life settlements.[5] RiverRock raised capital from investors, used that capital to acquire portfolios of life-insurance policies, and managed those policies through investment funds.[6] By 2023, RiverRock had raised and managed approximately $268 million in life-settlement assets across eight investment vehicles.[7]

2. RiverRock operated with a small, specialized workforce.[8] In 2023, it employed approximately twelve people, including personnel responsible for underwriting, fund operations, compliance, investor relations, and fundraising.[9] Those employees were responsible for acquiring and managing the policies held by RiverRock's funds and maintaining RiverRock's relationships with investors.[10]

3. Abacus also operated in the life-settlement industry.[11] Although RiverRock and Abacus participated at different points in the life-settlement market, their businesses overlapped.[12] Abacus sourced and acquired life-insurance policies, while RiverRock raised and managed investment funds that purchased and held such

---

5 Deposition Transcript of Jay Jackson, taken on July 24, 2026 ("Jackson Depo."), attached hereto as **Exhibit** "**A**," at Ex. 30; Deposition Transcript of Anthony Annino, taken on July 29, 2026 ("Annino Depo."), attached hereto as **Exhibit** "**B**," at 71:3-9; Declaration of Hugh Tawney in Support of Plaintiff's Motion for Partial Summary Judgment as to Liability, executed on September 1, 2026, ("Tawney Dec."), attached hereto as **Exhibit** "**C**," ¶ 3.

6 Tawney Dec., Ex. C, ¶ 3.

7 Annino Depo., Ex. B, at Ex. 1; Tawney Dec., Ex. C, ¶¶ 3, 5.

8 Annino Depo, Ex. B, at 177:21-23; Tawney Dec., Ex. C, ¶¶ 4, 15; Declaration of Amy Springs, Esq. in Support of Plaintiff's Motion for Partial Summary Judgment, executed on September 1, 2026 ("Springs Dec."), attached hereto as **Exhibit** "**D**," ¶ 11.

9 Annino Depo., Ex. B, at 27:15-22, 177:21-23; Tawney Dec., Ex. C, ¶ 4; Springs Dec., Ex. D, ¶ 11.

10 Annino Depo., Ex. B, at 27:15-22; Tawney Dec., Ex. C, ¶ 4.

11 Jackson Depo., Ex. A, at 334:21-335:10.

12 Jackson Depo., Ex. A, at 60:8-10, 335:11-336:1; Annino Depo, Ex. B, at 71:3-10.

policies.[13] Two such funds included the RiverRock Institutional Fund VIII ("Fund VIII") and Longevity Funds, for which RiverRock was actively raising funds at the time of Abacus' breach.[14]

4. Abacus' CEO Jay Jackson ("Jackson") testified that Abacus had sold policies to RiverRock in the past.[15]

5. RiverRock and Abacus also had longstanding relationships within the same industry.[16] Before joining Abacus, Jackson worked for RiverRock.[17]

6. Jackson acknowledged that a competitor's knowledge that Abacus and RiverRock were involved in a Potential Acquisition could "create a problem down the road."[18]

## B. The Confidentiality Agreement

7. In late 2023, Abacus and RiverRock, through their CEOs, Jackson and Anthony Annino ("Annino"), began discussing the Potential Acquisition of RiverRock by Abacus.[19] Before RiverRock provided Abacus with confidential business information for its evaluation of the transaction, the Parties agreed to enter into a confidentiality agreement.[20]

---

13 Jackson Depo., Ex. A, at 335:11-336:15.
14 Annino Depo., Ex. B, at 30:3-12, 54:16-25; Tawney Dec., Ex. C, ¶¶ 5, 6.
15 Jackson Depo., Ex. A, at 80:11-15.
16 Jackson Depo., Ex. A, at 330:20-25; Annino Depo., Ex. B, at 23:8-21; Tawney Dec., Ex. C, ¶ 13.
17 Jackson Depo., Ex. A, at 330:20-25; Annino Depo., Ex. B, at 23:8-24:9.
18 Jackson Depo., Ex. A, at 301:3-302:7.
19 Jackson Depo., Ex. A, at 118:15-22, 183:14-21; Annino Depo., Ex. B, at 18:20-25, 42:20-43:15, 164:6-14.
20 Jackson Depo., Ex. A, at 85:6-11, 88:1-2, 88:23-89:13; Annino Depo., Ex. B, at 165:19-166:8.

8. On September 5, 2023, [redacted]. . . ."[21]

9. The Agreement [redacted][22]

10. [redacted]" as

[redacted]

[21] Jackson Depo., Ex. A, at 91:25-92:5, Ex. 3; Defendant's Responses and Objections to Plaintiff's First Set of Requests for Admission, served on July 14, 2025 ("Abacus RFA"), attached hereto as **Exhibit** "**E**," at No. 1.

[22] Jackson Depo., Ex. A, at 88:23-89:13, Ex. 3; Annino Depo., Ex. B, at 165:19-166:8.

[redacted][23]

11. [redacted]:

[redacted].[24]

12. [redacted]:

[redacted][25]

13. [redacted]

[redacted]

[redacted].[26]

---

23 Jackson Depo., Ex. A, at 96:18-98:1, Ex. 3 § 1(a).

24 Jackson Depo., Ex. A, at 94:2-21, Ex. 3 § 2(a).

25 Jackson Depo., Ex. A, at Ex. 3 § 2(b).

26 Jackson Depo., Ex. A, at Ex. 3 § 4.

14. [redacted]."[27]

## C. Negotiations for the Potential Acquisition Leading up to the Board Meeting

15. After the execution of the Agreement, RiverRock shared Confidential Information with Abacus.[28] On October 14, 2023, Annino emailed Jackson a document: "Renegade Model_Abacus" (the "Financial Model").[29] The information in the Financial Model was treated as strictly confidential and was not shared publicly.[30]

16. In the same email exchange, Jackson wrote to Annino: "Assuming all goes well, board approval etc. will be in a good position to close before year end."[31]

17. On November 5, 2023, Jackson wrote to Annino:

> We had a successful bond raise and we are ready to move forward with a term sheet. I am presenting to the Board on Thursday but I have already spoken with the key members and we are moving forward with the acquisition . . . I am hoping to have a term sheet to you shortly after the board meeting on Thursday afternoon. We would still be a before year end target close.[32]

## D. Abacus Prepared a Board Deck With RiverRock's Confidential Information

18. Abacus scheduled a meeting of its Board of Directors for November 9, 2023.[33]

---

[27] Jackson Depo., Ex. A, at Ex. 3 § 4.
[28] Jackson Depo., Ex. A, at 107:6-108:15; Annino Depo., Ex. B, at 160:17-161:13.
[29] Jackson Depo., Ex. A, at 165:18-167:24, Ex. 8; Annino Depo., Ex. B, at 95:11-96:11, Ex. 10.
[30] Jackson Depo., Ex. A, at Ex. 3; Annino Depo., Ex. B, at 150:12-151:19, 191:4-12, 192:3-15; Tawney Dec., Ex C, ¶ 8; Springs Dec., Ex. D, ¶ 4.
[31] Jackson Depo., Ex. A, at 57:21-58:17, Ex. 8; Annino Depo., Ex. B, at Ex. 10.
[32] Jackson Depo., Ex. A, at 182:4-185:6, Ex. 9.
[33] Jackson Depo., Ex. A, at 189:23-25.

19. In advance of the Board meeting, Abacus prepared and circulated to its Board of Directors an internal Board Deck containing two pages concerning RiverRock, which included a section discussing the planned acquisition of RiverRock, as well as a section containing the Financial Model sent by Annino to Jackson.[34]

20. The two pages in the Board Deck related to RiverRock contained RiverRock's Confidential Information.[35]

21. The first page included that RiverRock and Abacus were in discussions for an acquisition with the banner "ABL Wealth Advisors – ***Acquisition of RiverRock Funds***," the number of RiverRock investors; the acquisition price and structure; RiverRock's historical financial performance and estimated 2024 net revenue; and the confidential post-transaction plans for RiverRock employees, including that Abacus planned to "Reduce Gross Costs to 755k in 2024 due to labor and infrastructure redundancies."[36]

---

[34] Jackson Depo., Ex. A, at 165:18-167:24, 192:8-204:20, Ex. 11 (the Board Deck); Tawney Dec., Ex. C, ¶¶ 7, 8, 10; Springs Dec., Ex. D, ¶ 3; Abacus RFA, Ex. E, at Nos. 7, 9, 12, 13; Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories, served on July 14, 2025 ("Abacus Rog"), attached hereto as **Exhibit** "**F**," at No. 6 ("Defendant states that the Board Deck … included two pages referencing Plaintiff."); Defendant's Amended Answer and Affirmative Defenses to Plaintiff's Amended Complaint [D.E. 85], filed on July 9, 2026 ("Am. Ans."), attached hereto as **Exhibit** "**G**," ¶¶ 30-31.

[35] Jackson Depo., Ex. A, at 261:15-265:7, Ex. 11, Ex. 19; Annino Depo., at 150:15-151:18, 176:9-177:23, 188:18-192:15, Tawney Dec., Ex. C, ¶¶ 7, 8, 10; Springs Dec., Ex. D, ¶ 3; Abacus RFA, Ex. E, at Nos. 7, 9, 12, 13; Abacus Rog., Ex. F, at No. 6; Deposition Transcript of Jeff Smith, taken on June 24, 2026 ("Smith Depo."), attached hereto as **Exhibit** "**H**," at 148:16-154:11.

[36] Jackson Depo., Ex. A, at 72:16-21, 197:2-199:12, Ex. 11, Ex. 30; Annino Depo, Ex. B, at 151:2-18; Tawney Dec., Ex. C, ¶ 7; Springs Dec., Ex. D, ¶ 3.

22. The second page of the Board Deck related to RiverRock was also titled "ABL Wealth Advisors – ***Acquisition of RiverRock Funds***" and it included the Financial Model of RiverRock previously provided by Annino.[37] The Financial Model included RiverRock's management fees, acquisition fees, carried interest, payroll, commissions, Expense Reimbursements, P-card, Accounting and tax information, tech software costs, insurance, miscellaneous expenses, net income loss, SSW contributions, potential synergies with Abacus, pro-forma cash flow, and a valuation number of $10,029,963. It also stated that RiverRock's payroll would be reduced from $2,842,718 in 2023 to $500,000 in 2024.[38]

23. Prior to the Board meeting, Jackson circulated the Board Deck containing RiverRock's Confidential Information to the Abacus Board and the RiverRock materials were presented at that meeting.[39]

24. On November 16, 2023, after learning that a third party knew Abacus was "working on a deal with RR," Jackson acknowledged in a contemporaneous email to other executives that the Board Deck contained Confidential Information:

> Somehow Coventry knows we are working on a deal with RR and Reid is flying out to see RR Friday. Super frustrating. I am hopeful that no one said anything to anyone even by accident. **This is non public information and will impact our potential deal.** Always

---

[37] Jackson Depo., Ex. A, at 197:24-199:5, Ex. 11; Tawney Dec., Ex. C, ¶ 7; Springs Dec., Ex. D, ¶ 3.

[38] Jackson Depo., Ex. A, at 197:24-199:5, Ex. 11; Annino Depo., Ex. B, at 96:17-23; Tawney Dec., Ex. C, ¶ 7; Springs Dec., Ex. D, ¶ 3; Abacus RFA, Ex. E, at No. 10 ("Defendant admits only that the Board Deck included a purported valuation of RiverRock that was prepared by Plaintiff at $10,029,963.00.").

[39] Jackson Depo., Ex. A, at 192:8-193:17, Ex. 11; Abacus RFA, Ex. E, at No. 7; Abacus Rog, Ex. F, at No. 6 ("Defendant states that the Board Deck … included two pages referencing Plaintiff."); Am. Ans., Ex. G, ¶¶ 30-31.

remember, anything we say or materials used in the board meeting or in the hallways is non public and we cannot tell anyone including our family. (Emphasis added).[40]

## E. Abacus Posted the Board Deck on its Public-Facing Investor Website

25. On November 14, 2023, at 10:26 am EST, Abacus caused the Board Deck, including the two pages containing RiverRock's Confidential Information, to be posted to its public-facing investor website located at https://ir.abacusgm.com under the Presentations subtab, and the Board Deck remained posted and publicly accessible until November 15, 2023 at 3:30 pm.[41]

26. The link to the Board Deck received 32 clicks while publicly available.[42]

27. At the time of the Board Deck's posting, RiverRock was actively raising capital for Fund VIII and the Longevity Fund, and Hugh Tawney ("Tawney"), RiverRock's Director of Sales, was spearheading those efforts and was actively communicating with existing and prospective investors about potential investments.[43]

## F. Abacus Directed that the Board Deck be Posted on its Public Website

28. At the relevant time, Jeff Smith ("Smith") was Abacus's Director of Marketing.[44] In that capacity, Smith transmitted the Board Deck to Marissa Young ("Young") at ICR, Inc., Abacus's investor-relations firm, for posting on Abacus's

---

[40] Jackson Depo., Ex. A, at 261:15-265:18, Ex. 19; Annino Depo., Ex. B, at 150:12-151:19, 176:9-177:24 (Annino confirms that the RiverRock information contained within the Board Deck was Confidential Information); Smith Depo., Ex. H, at 148:16-154:11.

[41] Jackson Depo., Ex. A, at 237:16-239:22, 240:20-243:12; Abacus RFA, Ex. E, at Nos. 9, 11-13; Abacus Rog, Ex. F, at Nos. 6, 8; Smith Depo., Ex. H, at 102:5-103:7.

[42] Abacus RFA, Ex. E, at No. 9; Abacus Rog, Ex. F, at No. 8; Smith Depo., Ex. H, at 159:1-3.

[43] Annino Depo., Ex. B, at 54:16-25, Ex. 3, Ex. 4, Ex. 28; Tawney Dec., Ex. C, ¶¶ 5-6.

[44] Abacus Rog, Ex. F, at No. 4; Smith Depo., Ex. H, at 17:16-18.

public investor website, and ICR thereafter transmitted the Board Deck to Notified, an investor-relations firm, which maintained and posted materials to the website on Abacus's behalf.[45]

29. On November 14, 2023 at 9:33 am, Smith wrote to Young and instructed: "Here is the Q3 board deck for the ir website," and attached the Board Deck, containing two pages of RiverRock's Confidential Information.[46] On November 14, 2023 at 3:25 pm, Young responded: "Thank you! I will add it to the site."[47]

30. At the time Smith transmitted the Board Deck to Young, he was unaware that Abacus and RiverRock had entered into the Agreement and did not know that the RiverRock-related information in the Board Deck was subject to contractual confidentiality obligations.[48] No one at Abacus, including Jackson, had informed Smith of the Agreement or instructed him that the RiverRock-related portions of the Board Deck could not be publicly disclosed.[49] Jackson also testified that he failed to advise his colleagues and the Board members of the Agreement prior to their email receipt of RiverRock's Confidential Information, in violation of the Agreement.[50]

---

45 Jackson Depo., Ex. A, at 237:16-239:25, 242:19-243:12; Smith Depo., Ex. H, at 94:18-95:15, 100:23-101:10, 102:5-103:7, 112:13-113:8, 114:13-118:5; Abacus Rog, Ex. F, at Nos. 6, 8.

46 Jackson Depo., Ex. A, at 240:20-241:25, Ex. 15; Smith Depo., Ex. H, at 114:13-115:5, Ex 9.

47 Smith Depo., Ex. H, at 121:16-122:1, Ex 10.

48 Jackson Depo., Ex. A, at 204:13-20; Smith Depo., Ex. H, at 44:5-47:12, 59:11-14.

49 Jackson Depo., Ex. A, at 204:13-20; Smith Depo., Ex. H, at 44:5-47:12, 59:11-14.

50 Jackson Depo., Ex. A., at 82:20-83:25, 204:13-20, Ex. 3 § 4.

31. Smith testified he did not review the Board Deck before sending it to ICR for posting on Abacus's public investor website.[51] He also did not instruct Young to review the Board Deck for confidential or sensitive information before posting it.[52]

## G. Abacus Admits the Disclosure

32. Upon discovering that the Board Deck had been posted on its public investor website, Abacus directed that it be removed.[53] On November 15, 2023, Smith emailed ICR: "Hey 911 here, Let's get that 3Q board deck pulled ASAP."[54] On November 17, 2023, Smith sent ICR a replacement document, stating that it was the "Public deck for IR site. I promise it's the right one this time," and Jackson responded to that email "Wait not yet!!!! – I will send."[55]

33. On November 17, 2023, Annino sent Jackson a screenshot of a text message where Lucas Siegel, an advisor to RiverRock wrote to him: "Abacus posted your financials on their website on accident which is how the leak happened. They took it down." Despite Jackson having already known about the public disclosure for two days Jackson responds: "Holy shit. I just landed. Let me look into this. We use ICR for IR. They must have posted the board deck and not the public deck. fme [sic]. I am so sorry." An hour later, Jackson wrote again "I just confirmed. They accidentally

---

51 Smith Depo., Ex. H, at 58:22-59:3, 116:15-21.

52 Smith Depo., Ex. H, at 121:16-122:20, Exs. 9, 10.

53 Jackson Depo., Ex. A, at 245:7-246:10; Abacus Rog, Ex. F, at No. 7; Smith Depo., Ex. H, at 123:10-125:5.

54 Jackson Depo., Ex. A, at 257:16-258:19, Ex. 17; Abacus Rog, Ex. F, at No. 7; Smith Depo., Ex. H, at 124:7-125:25, Ex. 11.

55 Jackson Depo., Ex. A, at 259:9-261:2, Ex. 18; Smith Depo., Ex. H, at 139:20-142:5, Ex. 14.

posted our Board deck instead of our public deck. I am really embarrassed and again truly apologize."[56]

34. Abacus admits that on December 5, 2023, a reporter, Donna Horowitz published an article in The Deal titled "Abacus Accidentally Posts Document on Potential RiverRock Deal."[57] In the article, Horowitz further published RiverRock's Confidential Information to the public, including RiverRock's net losses, net income, total assets under management, estimated 2024 net revenue, deal price, and plans to slash RiverRock's payroll.[58]

## H. RiverRock Suffered Substantial Harm from the Disclosure

35. Annino testified that the public disclosure of RiverRock's Confidential Information was devastating to RiverRock.[59] Before Abacus publicly posted the Board Deck, RiverRock's employees did not know about the Potential Acquisition.[60] Even RiverRock's general counsel, Amy Springs ("Springs") did not know about the Potential Acquisition.[61] The Board Deck plainly stated "ABL Wealth Advisors – ***Acquisition of RiverRock Funds***" and contained the Financial Model described above

[56] Jackson Depo., Ex. A, at 288:11-299:2, Ex. 22; Annino Depo., Ex. B, at 180:8-183:7, Ex. 23.

[57] Jackson Depo., Ex. A, at 325:20-23, Ex. 30; Abacus RFA, Ex. E, at No. 14; Smith Depo., Ex. H, at 165:4-167:4, Ex. 18.

[58] Jackson Depo., Ex. A, at 325:20-23, Ex. 30; Springs Dec., Ex. D, ¶¶ 6, 9; Declaration of Denny Mathew in Support of Plaintiff's Motion for Partial Summary Judgment as to Liability, executed on September 1, 2026 ("Mathew Dec."), attached hereto as **Exhibit** "**I**," ¶ 9.

[59] Annino Depo., Ex. B, at 154:3-155:23, 172:21-174:1; *see also* Tawney Dec., Ex. C, ¶¶ 14, 16, 18, 20; Springs Dec., Ex. D, ¶¶ 10, 14.

[60] Annino Depo., Ex. B, at 174:3-177:21; Tawney Dec., Ex. C, ¶ 9; Springs Dec., Ex. D, ¶ 5; Mathew Dec., Ex. I, ¶¶ 4, 8.

[61] Annino Depo., Ex. B, at 177:2-8; Springs Dec., Ex. D, ¶ 5.

in paragraphs 15 and 22.[62] The Board Deck therefore disclosed not only the existence of the Potential Acquisition and RiverRock's confidential financial information, but also that the majority of RiverRock's employees would lose their jobs upon acquisition.[63]

36. Shortly after the breach on December 5, 2023, Annino wrote to Jackson:

> RiverRock learned that on or around November 14, 2023, Abacus posted a slide deck on its public-facing website which contained confidential information relating to RiverRock's assets, liabilities, and financial status. The slide deck also disclosed Abacus's potential acquisition of RiverRock and its plans post-acquisition. It goes without saying that the disclosed information is highly sensitive and confidential, and RiverRock kept it closely confidential. Obviously, this disclosure was a significant breach of the Confidentiality Agreement . . . during the time it was posted, we know that multiple people accessed the materials . . . those who saw these materials include RiverRock employees, who did not know about the potential sale.[64]

37. Annino described the "turmoil" that unfolded after the breach.[65] He described RiverRock after the breach as being in "a state of confusion, significant confusion . . . at least initially amongst the staff and then . . . amongst the investor base as well," and when asked "would it be fair to say that after the disclosure, RiverRock employees began leaving?" He responded "yes."[66] Springs and Tawney also describe how the disclosure "destroyed RiverRock's business."[67]

---

62 Jackson Depo., Ex. A, at 197:2-199:12, Ex. 11, Ex. 30; Annino Depo, Ex. B, at 151:2-18, 186:11-188:16; Tawney Dec., Ex. C, ¶ 7; Springs Dec., Ex. D, ¶ 3.

63 Jackson Depo., Ex. A, at 197:2-199:12, Ex. 11; Annino Depo, Ex. B, at 151:2-18, 186:11-188:16; Tawney Dec., Ex. C, ¶¶ 10, 14; Springs Dec., Ex. D, ¶¶ 8-10; Mathew Dec., Ex. I, ¶ 13.

64 Annino Depo, Ex. B, at 190:14-193:9, Ex. 26.

65 Annino Depo, Ex. B, at 154:5-155:23, 203:6-13, 211:25-212:15; Tawney Dec., Ex. C, ¶ 14; Springs Dec., Ex. D, ¶ 10.

66 Annino Depo, Ex. B, at 154:5-155:23, 203:6-13, 211:25-212:15.

67 Tawney Dec., Ex. C, ¶¶ 14, 16, 18, 20; Springs Dec., Ex. D, ¶¶ 10, 14.

38. RiverRock had half of the company resign in the aftermath of the breach, including: (1) Denny Mathew ("Mathew"), former Chief Underwriting Officer, (2) Michelle Siler Garza, former Controller, (3) Michelle Eisenlohr, former Closing Analyst/Paralegal, (4) Valerie Coffey ("Coffey"), former Chief Operating Officer, (5) Springs, former General Counsel/Chief Compliance Officer, (6) Tawney, former Director, (6) Jill Naponic, former Director, and (7) Meg Yetter, former Vice President/Corporate.[68]

39. RiverRock could not replace its workforce because the entire industry now knew about a potential sale.[69] The life settlements industry was small to begin with, and any qualified candidate was now on notice that RiverRock would likely be acquired.[70]

40. Mathew learned of the breach on November 14, 2023 (the day of the disclosure), when an industry professional saw the public disclosure on the Abacus investor website and sent the Board Deck to his personal email account.[71] Mathew saw that Abacus proposed to acquire RiverRock and reduce its payroll, causing him to believe that he would lose his job.[72] After reviewing it, Mathew began searching for

[68] Annino Depo., Ex. B, at 154:3-25; Tawney Dec., Ex. C, ¶ 14; Springs Dec., Ex. D, ¶ 10; Mathew Dec., Ex. I, ¶ 13-14; Plaintiff's Second Amended Responses and Objections to Defendant's First Set of Interrogatories, served on May 5, 2026 ("RR Rog."), attached hereto as **Exhibit** "**J**," at No 5.

[69] Tawney, Dec., Ex. C, ¶ 15; Springs Dec., Ex. D, ¶ 11.

[70] Annino Dec., Ex. B, ¶¶ 3-9; Tawney, Dec., Ex. C, ¶ 15; Springs Dec., Ex. D, ¶ 11.

[71] Mathew Dec., Ex. I, ¶¶ 4-5, Ex. 1.

[72] Mathew Dec., Ex. I, ¶ 7.

other employment.[73] Thereafter, the Deal Article was published while he was at an industry conference where the potential acquisition and anticipated payroll reductions became widely discussed.[74] Mathew resigned for "personal reasons," effective December 27, 2023, but he explained that his "personal reason" for resigning was his "lack of certainty that [he] would have continued employment at RiverRock," which "arose directly from Abacus' disclosure."[75]

41. Mathew forwarded the Board Deck to RiverRock's Chief Operating Officer, Coffey.[76] As such, even prior to the Deal Article, the disclosure thereby reached additional RiverRock employees who had not previously known about the Potential Acquisition or Abacus's projected payroll reductions.[77]

42. Mathew and Springs testified that they enjoyed their positions and had no plans to leave RiverRock before the disclosure. Mathew explained that the uncertainty causing his resignation arose directly from the disclosure, and Springs testified that she would have continued working at RiverRock but for the disclosure.[78]

43. In addition to employees resigning, the disclosure affected RiverRock's ability to continue fundraising.[79] Tawney was Director of Sales at RiverRock,

---

[73] Mathew Dec., Ex. I, ¶ 7.
[74] Mathew Dec., Ex. I, ¶¶ 10-12.
[75] Mathew Dec., Ex. I, ¶ 14.
[76] Mathew Dec., Ex. I, ¶ 8, Ex. 2.
[77] Mathew Dec., Ex. I, ¶ 8, Ex. 2.
[78] Mathew Dec., Ex. I, ¶¶ 3, 14; Springs Dec., Ex. D, ¶¶ 2, 15.
[79] Annino Depo., Ex. B, at 155:1-6, 172:21-174:1, Ex. 22; Tawney Dec., Ex. C, ¶¶ 16-17; Springs Dec., Ex. D, ¶¶ 12-14.

responsible for raising capital.[80] At the time of the disclosure, he was actively raising capital for Fund VIII and the Longevity Fund,[81] but following the disclosure, RiverRock suspended its fundraising activities.[82] Springs directed Tawney and RiverRock to cease fundraising because the disclosure and its aftermath had materially changed the information RiverRock could provide to existing and prospective investors.[83] RiverRock could no longer accurately identify the personnel who would manage the funds, whether RiverRock would continue operating independently, or what its future management and ownership structure would be.[84] According to Springs, RiverRock could not responsibly solicit millions of dollars from investors while those material questions remained unresolved.[85]

44. The public disclosure of the potential acquisition and anticipated workforce reductions also impeded RiverRock's ability to recruit qualified replacement personnel. Because the life-settlement industry is relatively small, prospective candidates were aware that RiverRock might be acquired and that its workforce might be reduced.[86]

45. After the disclosure, a prospective investor with whom Tawney had been in discussions reached out and wrote: "I was just told you have been taken over by

---

80 Tawney Dec., Ex. C, ¶ 4; Springs Dec., Ex. D, ¶ 13.

81 Annino Depo., Ex. B, at 30:3-12, 54:16-25; Tawney Dec., Ex. C, ¶¶ 5, 6.

82 Annino Depo., Ex. B, at 155:1-6, 172:21-174:1, Ex. 22; Tawney Dec., Ex. C, ¶¶ 16-18; Springs Dec., Ex. D, ¶¶ 12-14.

83 Tawney Dec., Ex. C, ¶¶ 16-18; Springs Dec., Ex. D, ¶¶ 12-13.

84 Tawney Dec., Ex. C, ¶¶ 16-18; Springs Dec., Ex. D, ¶¶ 12-13.

85 Tawney Dec., Ex. C, ¶¶ 16-18; Springs Dec., Ex. D, ¶¶ 12-13.

86 Annino Dec., Ex. B, ¶¶ 3-9; Tawney, Dec., Ex. C, ¶ 15; Springs Dec., Ex. D, ¶ 11.

Abacus. Hope you ok."[87] Tawney forwarded this communication to Springs and wrote "I think the disclosure has seriously jeopardized the opportunity."[88]

46. Annino described the disclosure and its aftermath as a "massive disruption" that left RiverRock with no practical alternative but to sell.[89] Tawney and Springs likewise testified by declaration that the disclosure was detrimental to RiverRock and it deprived RiverRock of the ability to choose whether to continue operating independently.[90]

47. On December 15, 2023, Abacus, informed RiverRock that "there is not sufficient support among the stakeholders at Abacus to move forward with a transaction."[91] By that time, according to Annino, RiverRock's ability to continue operating had become "materially impaired."[92]

## LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is "genuine" only if a reasonable jury could return a verdict for the

---

87 Annino Depo., Ex. B, at 200:3-12, Ex. 28; Tawney Dec., Ex. C, ¶ 17.

88 Annino Depo., Ex. B, at 199:4-200:2, Ex. 28; Tawney Dec., Ex. C, ¶ 17.

89 Annino Depo., Ex. B, at 153:9-155:2, 155:13-156:17, 172: 21-25; Tawney Dec., Ex. C, ¶¶ 18-20; Springs Dec., Ex. D, ¶¶ 14-15.

90 Tawney Dec., Ex. C, ¶¶ 15-20; Springs Dec., Ex. D, ¶¶ 11-14.

91 Jackson Depo., Ex. A, at 21:5-22, Ex. 1; Annino Depo., Ex. B, at 169:24-170:15.

92 Annino Depo., Ex. B, at 155:13-19; Tawney Dec., Ex. C, ¶¶ 14-20; Springs Dec., Ex. D, ¶¶ 12, 14-15.

nonmovant, and a fact is "material" only if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also Hickson Corp. v. Northern Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). Once the moving party meets this burden, the non-moving party must present specific facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 247-48. Conclusory allegations and speculation are insufficient to defeat a properly supported motion for summary judgment. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).

## ARGUMENT

### A. The Undisputed Facts Establish Abacus's Liability for Breach of the Confidentiality Agreement.

Under Florida law, a breach of contract claim requires: (1) a valid contract; (2) a material breach thereof; and (3) damages. *Great Am. Ins. Co. v. Mueller*, No. 8:19-CV-3170-TPB-JSS, 2021 WL 1720284, at *2 (M.D. Fla. Apr. 30, 2021). Each of these elements is established by the undisputed record in this case.

#### *1. A Valid and Enforceable Confidentiality Agreement Exists*

The existence and validity of the Agreement is undisputed. On September 5, 2023, Jackson executed the Agreement on behalf of Abacus, and Annino executed it on behalf of RiverRock. SUMF ¶ 9. Abacus admits to its entry into the Agreement. Am. Ans., Ex. G, at No. 1. [redacted]" and the related "[redacted]." SUMF ¶ 8. It [redacted]

[redacted], [redacted] SUMF ¶¶ 7-14. The Agreement was valid, enforceable, and in effect when Abacus publicly disclosed RiverRock's information in November 2023. SUMF ¶¶ 7-14.

***2. Abacus Materially Breached the Confidentiality Agreement***

The undisputed facts also establish that Abacus materially breached the Agreement by publicly disclosing RiverRock's Confidential Information on its investor website. "To constitute a vital or material breach, a party's nonperformance must 'go to the essence of the contract.'" *Fitzgerald v. McNae*, 769 F. Supp. 3d 1291, 1298 (S.D. Fla. 2025), reconsideration denied, No. 22-CV-22171, 2025 WL 948410 (S.D. Fla. Mar. 28, 2025). In *Fitzgerald*, the Southern District of Florida held that a disclosure about the existence of an agreement where such agreement prohibited disclosure went to the "essence of the contract." *Id*. Like in *Fitzgerald*, Abacus' breach was material because confidentiality was the object of the Agreement. SUMF ¶¶ 7-14. Abacus expressly agreed to maintain the Confidential Information in "strict confidentiality." SUMF ¶¶ 7-14. Posting that information on a public investor website deprived RiverRock of the principal benefit for which it contracted.

*a. The Board Deck Contained "Confidential Information" Under the Agreement*

The two pages of the Board Deck related to RiverRock that Abacus published on its public-facing investor website contained Confidential Information of RiverRock which was provided by Annino to Jackson. SUMF ¶¶ 15, 19-22. The existence of the

Potential Acquisition and the data in the Financial Model were both held in strict confidence and were not publicly disclosed. SUMF ¶¶ 15, 19-22, 35.

[redacted]. *Id.*

Specifically, Abacus disclosed the following non-public information: (a) Abacus and RiverRock were discussing an acquisition; (b) the proposed acquisition valuation and structure; (c) the number of RiverRock investors; (d) RiverRock's historical financial performance and estimated 2024 revenue; (e) RiverRock's management fees, acquisition fees, carried interest, payroll, rent, commission, expenses, net income, projected cash flow, and financial forecast; and (f) projected post-acquisition reductions in RiverRock's payroll from approximately $2,842,718 in 2023 to $500,000 in 2024 and zero in 2025. *See* SUMF ¶¶ 19-22, 25-33, 36-39. This information falls squarely within the definition of Confidential Information, as each category is

expressly or necessarily covered by §1(a). *See* SUMF ¶ 10. RiverRock's revenues, fees, expenses, income, cash flow, and valuation constitute information concerning its "[redacted] and "[redacted] *Id.* Its investor count constitutes information concerning its "[redacted] *Id.* The acquisition discussions, proposed price, and transaction structure concern its "[redacted]." *Id.* And the projected workforce and expense reductions concern RiverRock's "[redacted] and "[redacted][93] *Id.*; *see also Fitzgerald*, 769 F. Supp. 3d at 1298 (granting summary judgment for plaintiff on breach of contract claim where defendant materially breached an express confidentiality provision in a settlement agreement by publicly disclosing the existence of the contract, its stated purpose, and the precise categories of sensitive information the parties had contractually agreed to protect); *see also Youtie v. Macy's Retail Holding, Inc.*, 626 F. Supp. 2d 511 (E.D. Pa. 2009) (granting summary judgment for counter-plaintiff on its breach of contract claim where the agreement protected the confidential information disclosed and the defendant had not provided any evidence to rebut the nonpublic nature of the information).

Abacus *admits* that the Board Deck contained two pages concerning RiverRock and "included information provided by Plaintiff to Defendant." SUMF ¶¶ 19-22. The

---

[93] None of the exclusions in §1(b) apply. The RiverRock information was not publicly available before Abacus disclosed it; Abacus received the Financial Model from RiverRock during the parties' confidential discussions; and Abacus has identified no evidence that it previously possessed the information, received it lawfully from another source, or independently developed it. SUMF ¶ 15.

Financial Model appearing in the Board Deck reflected the model Annino provided to Jackson during the parties' acquisition discussions. SUMF ¶¶ 19-22. Abacus further *admits* that the potential acquisition with RiverRock was non-public information. SUMF ¶ 24. Because the contents of the RiverRock-related pages are undisputed and [redacted], those pages constitute "Confidential Information" as a matter of law. *See* SUMF ¶¶ 10, 19-22.

*b. Abacus Disclosed RiverRock's Confidential Information to Third Parties, in Violation of the Agreement, and Abacus Admitted to the Disclosure*

[redacted]." SUMF ¶¶ 11-13.[94]

[94] Abacus failed to meet even this minimal standard. Abacus permitted Smith to transmit the Board Deck to the public-facing investor website, without ever informing Smith of the Agreement or the Confidential Information contained in the Board Deck. SUMF ¶ 30-31. Jackson also testified that before he circulated the Board Deck, he did not inform Abacus' board members of the Agreement. SUMF ¶ 30. Abacus thus not only disclosed the Confidential Information to the public but also failed to inform its own Representatives of the existence of the Agreement they were supposed to be bound by. *See id.* No reasonable standard of care would have allowed for such an outcome.

The undisputed facts establish a disclosure outside those limited purposes and recipients.[95] On November 14, 2023, Smith transmitted the Board Deck containing RiverRock's Confidential Information to ICR Inc., which in turn directed Notified to post the Board Deck to Abacus' public-facing website. SUMF ¶¶ 25, 28-31. The website was publicly accessible, the Board Deck received 32 clicks, and the Confidential Information remained on the website for 29 hours. SUMF ¶¶ 25-26. Posting RiverRock's Confidential Information and the terms of the potential transaction to a public website was neither [redacted]" SUMF ¶¶ 11-13, 25-31, 36. Donna Horowitz, then published an article in an industry periodical disclosing it. SUMF ¶ 34. Because the material facts concerning the posting are undisputed, and the Agreement prohibits the public disclosure of Confidential Information, Abacus breached §§2(a) and 4 as a matter of law.

[95] Abacus admits that it publicly posted the Board Deck. In its responses to RiverRock's Requests for Admission, Abacus admitted that the Board Deck—including the two pages concerning RiverRock—was posted under the "Presentations" subtab of its public investor website from November 14, 2023, at 10:26 a.m. EST until November 15, 2023, at 3:30 p.m. EST. SUMF ¶ 25; Abacus RFA, Ex. E, at No 9, 11-13. Abacus further admitted that the link to the Board Deck received thirty-two clicks while publicly available. SUMF ¶ 26; Abacus RFA, Ex. E, at No 9. These matters are "conclusively established" under Federal Rule of Civil Procedure 36(b). Fed. R. Civ. P. 36(b). Where, as here, a defendant has admitted the operative facts establishing breach, there is no genuine dispute for the jury to resolve. *See Am. Aeronautical Corp. v. Aviation Engine Serv., Inc.*, No. 12-21276-CIV, 2013 WL 1499353, at *2 (S.D. Fla. Apr. 10, 2013) (Because the Plaintiff's facts supporting a breach of contract claim were "deemed admitted," the Court found that Plaintiff was entitled to summary judgment on a breach of contract claim); *see also Payroll Mgmt., Inc. v. Enrestoration, Inc.*, No. 3:17CV764-MCR-GRJ, 2018 WL 7350675, at *2 (N.D. Fla. Apr. 19, 2018) (granting the plaintiff's motion for summary judgment on a breach of contract claim where the "undisputed" facts ensured all of the elements of the breach of contract claim were satisfied); *Fitzgerald*, 769 F. Supp. 3d at 1299.

### 3. *RiverRock is Entitled to Nominal Damages*

The final element, damages, is established because Florida law requires an award of at least nominal damages upon proof of a breach of contract. *See Walter Intl. Prods., Inc. v. Salinas*, 650 F.3d 1402, 1418 (11th Cir. 2011). The record also contains substantial evidence that Abacus' disclosure caused actual harm to RiverRock. RiverRock employees who had not known of the Potential Acquisition learned of it through the disclosure. SUMF ¶¶ 21, 35–42. RiverRock's former CEO, Anthony Annino, described the ensuing events as "turmoil," "significant confusion," and a "massive disruption." SUMF ¶¶ 36-47. He testified that employees began leaving, fundraising ceased, and RiverRock's ability to operate independently became "materially impaired." SUMF ¶¶ 36-47. Nevertheless, for purposes of this Motion, the undisputed breach entitles RiverRock to at least nominal damages as a matter of law, thereby satisfying the damages element of its claim. *See AmeriPath, Inc. v. Wetherington*, No. 10-60766-CIV, 2011 WL 1303804 (S.D. Fla. Apr. 4, 2011) ("A plaintiff moving for summary judgment as to liability only does not need to prove the specific amount of damages to prevail."); *see also Fitzgerald*, 769 F. Supp. 3d at 1298.

## **CONCLUSION**

Because the undisputed record establishes the existence of a valid Agreement, Abacus's breach thereof, and RiverRock's entitlement to nominal damages, RiverRock is entitled to partial summary judgment as to Abacus's liability.

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0535

By: */s/A. Sheila Oretsky*
A. SHEILA ORETSKY
*Lead Counsel*
Florida Bar No. 31365
sheila.oretsky@gtlaw.com
raquel.acuna@gtlaw.com
JENNIFER JUNGER
Florida Bar No. 125853
jungerj@gtlaw.com
fernandezfe@gtlaw.com

*Attorneys for Plaintiff Renegade Capital GP, LLC d/b/a RiverRock Funds, LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 1st day of September, 2026, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ A. Sheila Oretsky*
A. Sheila Oretsky