UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RENEGADE CAPITAL GP, LLC d/b/a RIVERROCK FUNDS LLC, a Delaware limited liability company,

CASE NO.: 6:25-cv-00424

Plaintiff,

v.

ABACUS LIFE, INC. n/k/a ABACUS GLOBAL MANAGEMENT, INC., a Delaware Corporation,

Defendant,

______________________________/

**PLAINTIFF'S SECOND AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff Renegade Capital GP, LLC, d/b/a RiverRock Funds LLC ("RiverRock" or "Plaintiff") hereby amends its answers to Defendant Abacus Life, Inc. n/k/a Abacus Global Management, Inc.'s ("Abacus" or "Defendant") interrogatories propounded upon Plaintiff (the "Interrogatories")[1] as follows.

1 The responses set forth herein are based on Plaintiff's current knowledge. Plaintiff expressly reserves the right to withdraw, amend or supplement its responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure, to assert such additional or different responses as may be appropriate in light of further ongoing discovery and/or investigation.

## GENERAL OBJECTIONS

Although Plaintiff's objections to Abacus' specific interrogatories are below, Plaintiff objects generally to the Interrogatories as follows:

1. Plaintiff objects generally to the Interrogatories to the extent they seek to impose obligations not contemplated by the Federal Rules of Civil Procedure or to alter or expand Plaintiff's obligations under those rules.

2. Plaintiff objects to the Interrogatories' instructions, definitions, and specific interrogatories to the extent that they seek documents and things or information protected by the attorney-client privilege, work product protection, or any other applicable privilege or protection.

## INTERROGATORIES

1. Identify all individuals who have knowledge regarding the negotiations and Communications relating to the Business Transaction with Abacus and describe what information each individual possesses.

**ANSWER:** To the best of RiverRock's knowledge, RiverRock directs Abacus to its Initial Disclosures and also identifies the following individuals with such knowledge:

Gabriel Siegel
Chairman of RiverRock
c/o Greenberg Traurig, P.A., Sheila Oretsky
333 S.E. 2nd Ave., Miami, Florida 33131
305-579-0535

Mr. Siegel has knowledge regarding the negotiations relating to the Business Transaction, including the potential sale of RiverRock to Abacus, the Letter of Intent (the "LOI"), the Confidentiality Agreement entered as a part of the Business Transaction, the breach of the Confidentiality Agreement, and the damages caused to RiverRock as a result.

Lucas Siegel
Advisor
c/o Greenberg Traurig, P.A., Sheila Oretsky
333 S.E. 2nd Ave., Miami, Florida 33131
305-579-0535

Mr. Siegel has knowledge regarding the negotiations relating to the Business Transaction, including the potential sale of RiverRock to Abacus, the LOI, the Confidentiality Agreement, the breach of the Confidentiality Agreement, and the damages caused to RiverRock as a result.

Anthony Annino
Obra Capital, Inc., Senior Managing Director
100 Congress Avenue, Suite 725
Austin, Texas 78701

Mr. Annino is likely to possess information regarding the Business Transaction, including the potential sale of RiverRock to Abacus, the Confidentiality Agreement, the breach of the Confidentiality Agreement, and the damages caused to RiverRock as a result.

Jay Jackson
Abacus, Chief Executive Officer
c/o Quinn Emmanuel Urquhart & Sullivan, LLP
2601 S. Bayshore Drive, Suite 1550, Miami, Florida 33133

305-402-4880

Mr. Jackson likely possesses knowledge regarding the Business Transaction, including the potential sale of RiverRock to Abacus, the LOI, the Confidentiality Agreement and the breach of the Confidentiality Agreement.

Chris Romaine
Abacus, Chief Counsel
Quinn Emmanuel Urquhart & Sullivan, LLP
2601 S. Bayshore Drive, Suite 1550, Miami, Florida 33133
305-402-4880

Mr. Romaine is likely to possess information regarding the Business Transaction, including the LOI, the related negotiations, and the Slide Deck and disclosure of RiverRock's confidential information in violation of the Confidentiality Agreement.

Bill McCauley
Abacus, Chief Financial Officer
Quinn Emmanuel Urquhart & Sullivan, LLP
2601 S. Bayshore Drive, Suite 1550, Miami, Florida 33133
305-402-4880

Mr. McCauley is likely to possess information regarding the Business Transaction, including the LOI, the related negotiations, the Slide Deck, and disclosure of RiverRock's confidential information in violation of the Confidentiality Agreement.

Donna Horowitz
The Deal
41 Madison Avenue
New York, NY 10010
646-891-2135

Ms. Horowitz is likely to possess information regarding the Business Transaction, including the Slide Deck and disclosure of RiverRock's confidential information.

RiverRock reserves the right to supplement this list of persons with any additional persons who become known to possess information regarding the negotiations and communications relating to the Business Transaction with Abacus.

2. Identify all individuals responsible for or involved with preparing RiverRock's financial statements, including but not limited to cash flows, internal valuations, business plans, internal rates of return, projections, and financial models, and describe what information that individual possesses.

**ANSWER:** RiverRock objects to this request as being overbroad in that it is not limited to the financial statements prepared for Abacus' review as part of the potential acquisition between RiverRock and Abacus. RiverRock also objects on the grounds that the phrasing "describe what information the individual possesses" is vague, ambiguous and premised on a factual assumption not supported by the record, *i.e.*, that any of the individuals involved in preparing such financial information has possession of the same. RiverRock also objects that this request seeks information protected by the attorney client privilege and work product privilege.

Subject to and without waiving the foregoing objections, RiverRock responds that the following individuals were responsible for or involved in preparing the financial information sought through Interrogatory No. 2: to the best of RiverRock's current knowledge Anthony Annino, Michelle Garza, and Rob Kish were the only RiverRock employees that would have been involved in the preparation of RiverRock's financial statements, including but not limited to cash flows, internal valuations, business plans, internal rates of return, projections, and financial models.

RiverRock reserves the right to supplement this list of persons with any additional persons who become known to possess information regarding RiverRock's financial statements.

3. Describe the specific damages You contend were caused by Abacus, including a calculation of each category of damages and identifying any supporting documents.

**ANSWER:** As a result of Abacus' material breach, RiverRock suffered severe and irreparable harm. Its highly sensitive, confidential, and proprietary business information is now out in the open for anyone with internet access to review. RiverRock's reputation was harmed, key employees resigned, existing and potential investors refrained from further investment, its business was damaged, and even worse, after damaging RiverRock's business, Abacus refused to close on the deal. RiverRock continues to suffer the consequences of Abacus' egregious breach of the Confidentiality Agreement. While

RiverRock is still in the process of specifically calculating all damages it is entitled to seek against Defendant for its breach of the Confidentiality Agreement, RiverRock may seek the following categories of damages, including actual, compensatory, special damages, lost profits, punitive damages, and harm to goodwill and reputation. Prior to the breach, and as admitted by Abacus in its Board Deck, RiverRock was valued at $10,029,963.00. RiverRock estimates that the combined value of its losses, including lost profits, is approximately 15 million. RiverRock reserves the right to set out its damage calculation through a damages expert to be disclosed by June 2, 2026, pursuant to the Case Management and Scheduling Order dated May 23, 2025.

4. Describe all actions taken by You to mitigate any alleged damages suffered by RiverRock as a result of any alleged action by Abacus.

**ANSWER:** RiverRock objects to this request as it calls for a legal conclusion insofar as what constitutes a mitigation effort. Further, this request seeks information protected by the attorney client privilege and work product privilege.

Subject to and without waiving the foregoing objections, RiverRock states that after Abacus's posting of the Board Deck, RiverRock faced significant disruption, including the departure of key employees and the loss of investor relationships. RiverRock was in the process of implementing two new funds: Fund 8 and Longevity. Due to the breach, RiverRock's investors and potential investors either pulled their investment or decided not

to invest. The lifecycle for new investment opportunities takes place over time, usually with 1-2 years of work to acquire the investment. RiverRock lost future investors that had been in the pipeline, which prevented any further growth. Despite these trying circumstances, RiverRock undertook reasonable efforts to continue operations with what was left of the funds by retaining a reduced staff, obtaining assistance from third party vendors to assist with tasks that had previously been worked on by employees, reallocating responsibilities among remaining employees, and attempting to preserve relationships with existing investors. RiverRock has continued to operate with limited resources and staffing, doing its best to sustain business functions and maintain value under difficult conditions.

5. Identify each Individual that you allege resigned from RiverRock due to Abacus's alleged actions, including the date of their resignation, their former position at RiverRock, and their stated reason for resigning.

**ANSWER:** Before Abacus breached the Confidentiality Agreement between it and RiverRock by disclosing RiverRock's highly sensitive and confidential information, RiverRock employed 12 people on a full-time basis. RiverRock had half of the company resign at least in part in response to the breach and the aftermath thereof, including the long-term impacts of a financially damaged company. Those individuals are as follows:

- Anthony Annino, former Chief Executive Officer. Mr. Annino resigned from RiverRock effective on or about December 31, 2023.

- Valerie Coffey, former Chief Operating Officer. Ms. Coffey resigned from RiverRock effective on or about February 9, 2024.
- Michelle Eisenlohr, former Closing Analyst/Paralegal. Ms. Eisenlohr resigned from RiverRock effective on or about January 26, 2024.
- Michelle Siler Garza, former Controller. Ms. Garza resigned from RiverRock effective on or about January 19, 2024.
- Denny Matthew, former Chief Underwriting Officer. Mr. Matthew resigned from RiverRock effective on or about December 29, 2023.
- Amy Springs, former General Counsel/Chief Compliance Officer. Ms. Springs resigned from RiverRock effective on or about July 2024.
- Hugh Tawney, former Director. Mr. Tawney resigned from RiverRock effective on or about December 2024.
- Jill Naponic, former Director. Ms. Naponic resigned from RiverRock effective on or about December 2024.
- Meg Yetter, former Vice President/Corporate Secretary. Ms. Yetter resigned from RiverRock effective on or about May 2025.

6. Identify each investor who you allege was interested in investing in RiverRock, the time frame in which they were interested in investing in RiverRock, and the stated reason why each investor was unwilling to invest in or do business with RiverRock as alleged in Paragraph 24 of the Complaint.

**ANSWER:** RiverRock objects to Interrogatory No. 6 as vague and confusing. Paragraph 24 of the Complaint describes Confidential Information that RiverRock added to the data room for Abacus's review. The allegation itself does not make any allegations as to investors interested in RiverRock or any of the other information sought in Interrogatory No. 6. To

avoid any ambiguity created by the alleged typo in referencing Paragraph 24, RiverRock suggests that Abacus serve a new interrogatory on this subject.

7. Identify all persons or entities who were interested or expressed interest in acquiring RiverRock between January 1, 2023 and January 1, 2025.

**ANSWER:** Plaintiff objects to Interrogatory No. 7 to the extent it seeks to impose obligations beyond those imposed by the Federal Rules of Civil Procedure. RiverRock cannot possibly know all people or entities interested in acquiring RiverRock. Plaintiff further objects to Interrogatory No. 7 as seeking confidential information. This request is also objectionable because the information sought is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

8. Identify all individuals with knowledge of a potential acquisition of RiverRock by Obra Capital in 2023-2024.

**ANSWER:** Plaintiff objects to Interrogatory No. 8 as completely irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. RiverRock's potential acquisition by Obra Capital is the subject of a separate and related litigation, and Abacus is simply attempting to fish for information relevant to those proceedings, which are irrelevant to Abacus's breach and resulting damages here.

9. Identify all "Confidential Information" You allege Abacus accessed on RiverRock's "data room" and what "Confidential Information" Abacus allegedly included

in the Board Deck.

**ANSWER:** RiverRock responds that based on information and belief Abacus accessed the entirety of information found in the "data room," including spreadsheets reflecting RiverRock's actual internal rate of return, Registered Retirement Income Fund draws, repayments and total balances, adjusted financials, consolidated financials, Quickbooks, consolidated statement of net assets, confidential company agreements, audits, and other financial information. The Confidential Information contained within the Board Deck is found on Page(s)29 (there are two pages both of which are labeled as page 29). These pages were then posted to the Abacus investor website. The referenced pages contained the fact that there was a potential acquisition between RiverRock and Abacus, which was confidential and unknown to any of RiverRock's employees. It also contained a valuation of RiverRock, as set forth in a valuation chart. Everything in that valuation chart is also confidential. The Board Deck included Confidential Information provided by RiverRock to Abacus while under a Confidentiality Agreement, including that RiverRock was going to be acquired by Abacus and RiverRock's plans post-acquisition. This Confidential Information should have been protected.

10. Identify all "Confidential Information" You allege Abacus posted on its website and include who prepared that information, who provided that information to Abacus, how it was provided to Abacus, and each Individual with knowledge of that

information prior to the inadvertent posting of that information to Abacus' website.

**<u>ANSWER</u>**: RiverRock objects that this request is vague and ambiguous as to the phrases "who prepared that information, who provided that information to Abacus, how it was provided" because it is unclear whether Abacus is interested in the underlying data or the slide deck actually posted on the website.

Subject to the foregoing objections, and based on information and belief, Abacus prepared its own Board Deck, which included, among other things, two pages worth of RiverRock's Confidential Information on Page(s) 29. This includes a valuation of RiverRock and publication of the potential acquisition itself. Upon information and belief, RiverRock believes that Anthony Annino prepared the valuation. We will explore in discovery whether his assumptions were influenced by any discussions with any Abacus representative. Mr. Annino sent the valuation to Jay Jackson via email. *See* Renegade000016-20. To the best of RiverRock's knowledge Anthony Annino, Gabe Siegel, Lucas Siegel, Jay Jackson, and anyone in attendance at the board presentation would have had knowledge prior to the breach.

# VERIFICATION

I declare under penalty of perjury that the foregoing answers to interrogatories are true and correct.

By: ______________________________

Printed name: Gabriel Siegel

As: Member

STATE OF Tx ) COUNTY OF Harris )

The foregoing instrument was acknowledged before me this 4th day of May 2026, by Gabriel Siegel., who [ ] is personally known to me or [ ] produced ____________ (type of identification) as identification, and who took an oath contemporaneously with signing these interrogatories.

______________________________

SANDRA GARCIA
Notary Public, State of Texas
Comm. Expires 01-27-2028
Notary ID 132331644
NOTARY PUBLIC STATE OF TEXAS

Print/Type/Stamp Name: ______________

Notary Public-State of Texas

Commission Number: