**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

RENEGADE CAPITAL GP, LLC d/b/a RIVERROCK FUNDS LLC, a Delaware limited liability company,

Plaintiff,

v.

ABACUS LIFE, INC. n/k/a ABACUS GLOBAL MANAGEMENT, INC., a Delaware Corporation,

Defendant.

Case No.: 6:25-cv-00424-CEM-NWH

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1
COUNTER-STATEMENT OF UNDISPUTED FACTS ..... 2
LEGAL STANDARD ..... 7
ARGUMENT ..... 8
I. ABACUS DID NOT BREACH THE AGREEMENT ..... 9
A. A GENUINE DISPUTE REMAINS AS TO THE CONFIDENTIALITY OF THE POTENTIAL RIVERROCK TRANSACTION. ..... 9
B. A GENUINE DISPUTE REMAINS AS TO WHETHER THE CONTENTS OF THE BOARD DECK WERE CONFIDENTIAL. ..... 11
1. THE INFORMATION ON SLIDE 20 WAS NOT CONFIDENTIAL INFORMATION BECAUSE RIVERROCK HAD DISCLOSED IT TO INVESTORS. ..... 12
2. THE VALUATION MODEL ON SLIDE 21 WAS NOT CONFIDENTIAL INFORMATION BECAUSE IT WAS NOT MARKED AS CONFIDENTIAL AND MR. ANNINO DID NOT TREAT IT AS CONFIDENTIAL. ..... 14
II. RIVERROCK IS NOT ENTITLED TO DAMAGES ..... 16
CONCLUSION ..... 16

# TABLE OF AUTHORITIES

**Page**

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................ 7

*Briscoe v. Transamerica Premier Life Ins. Co.*,
2024 WL 7031916 (S.D. Fla. Nov. 25, 2024) ........................................ 10

*Cole v. Plantation Palms Homeowners Ass'n, Inc.*,
371 So. 3d 413 (Fla. Dist. Ct. App. 2023) ........................................ 7

*MSM Golf, L.L.C. v. Newgent*,
853 So. 2d 1086 (Fla. Dist. Ct. App. 2003) ........................................ 16

*Muroff v. Dill*,
386 So. 2d 1281 (Fla. Dist. Ct. App. 1980) ........................................ 7

*Smart Commc'ns Holding, Inc. v. Correct Sols., LLC*,
2023 WL 5003169 (M.D. Fla. Aug. 4, 2023) ........................................ 13

*US Thrillrides, LLC v. Intamin Amusement Rides Int. Corp. Est.*,
767 F. Supp. 3d 1331 (M.D. Fla. 2025) ........................................ 8

## Rules

Fed. R. Civ. P. 56 ........................................ 4

Fed. R. Civ. P. 56(a) ........................................ 7

## Other Authorities

RiverRock Funds, *RiverRock Announces the Appointment of Anthony J. Annino* (Nov. 19, 2019),
https://www.newswire.com/news/riverrock-announces-the-appointment-of-anthony-j-annino-21037634; ........................................ 12, 13

RRIF VI, LP, Notice of Exempt Offering of Securities (Form D) (Sept. 6, 2018),
https://www.sec.gov/Archives/edgar/data/1664650/000166465018000001/xslFormDX08/primary_doc.xml ........................................ 12, 13

## PRELIMINARY STATEMENT

RiverRock moves for summary judgment on liability, claiming there is no genuine dispute that "Abacus publicly disclosed RiverRock's Confidential Information," and treating as settled several disputes that can only be resolved by the factfinder after a full hearing. The Motion should be denied because RiverRock has not met its burden of establishing the absence of a genuine dispute as to the element of breach and damages in its breach of contract claim.

***First***, RiverRock has not met its burden of establishing the absence of a material fact as to whether RiverRock's information constituted "Confidential Information." RiverRock cannot muster conclusive proof that the Board Deck at issue here contained RiverRock's "Confidential Information" within the meaning of the parties' agreement (Dkt. 79-1, the "Confidentiality Agreement"). The Confidentiality Agreement only protects information that "is marked or would logically be considered" confidential, and it excludes information that is in the public domain. RiverRock argues that both its potential sale and the valuation model sent from its CEO's personal email account were confidential, but the record shows that RiverRock was shopping itself around, making no secret of the fact that it was for sale at the same time it was speaking with Abacus. Similarly, the valuation model was not treated confidentially. Mr. Annino sent it from his personal email, did not mark it as

confidential, and shared it with other parties interested in purchasing RiverRock.

***Second***, RiverRock's claim for nominal damages must also fail because nominal damages follow proof of breach and here, there is a genuine dispute as to whether a breach occurred.

Because there are genuine disputes of material fact at issue, and a reasonable jury could find in Abacus's favor on both breach and damages, RiverRock's Motion should be denied.

## COUNTER-STATEMENT OF UNDISPUTED FACTS

In its Motion for Partial Summary Judgment (Dkt. 114, the "Mot."), RiverRock relies on 47 paragraphs of "material facts" that it contends are "undisputed." It is clear that the only truly "material facts" the parties agree on are as follows[1]:

1. RiverRock is an asset manager focused on life settlements. Deposition Transcript of William Harris ("Harris Dep. Tr.") (Ex. 1) at 36:4-6; Mot. ¶ 1. Abacus is a public company that, among other things, also operates in the life settlements industry. Deposition Transcript of Jay Jackson ("Jackson Dep. Tr.") (Ex. 2) at 334:21-335:10; Mot. ¶ 3.

[1] Abacus does not dispute the fact that certain emails were exchanged between Mr. Jackson and Mr. Annino, nor does Abacus dispute the contents of the emails as quoted in Mot. ¶¶ 15-17, 24, 29, 32-33, 36, 40, 45. Abacus does otherwise dispute the conclusions and/or gloss RiverRock places on them, including RiverRock's characterization of its information as "Confidential Information."

2. In summer 2023, RiverRock and Abacus began to discuss a potential acquisition of RiverRock by Abacus. *See* Jackson Dep. Tr. at 85:16-86:15; Mot. ¶ 7.

3. On September 5, 2023, Abacus and RiverRock signed a confidentiality agreement. Dkt. 79-1, (the "Confidentiality Agreement"); Mot. ¶ 8. Jay Jackson, Abacus's CEO, signed on behalf of Abacus and Anthony Annino, RiverRock's CEO, signed on behalf of RiverRock. Jackson Dep. Tr. 88:23-89:13; Mot. ¶ 9.

4. After the Confidentiality Agreement was signed, RiverRock provided information to Abacus. Deposition Transcript of Anthony Annino ("Annino Dep. Tr.") (Ex. 3) at 165:14-17. On October 14, 2023, Mr. Annino sent Mr. Jackson a case study purporting to be a valuation model from his personal email. Ex. 4 at ABACUS_0002779 (the "Valuation Model"). Mr. Annino testified that he does not know how he prepared the Valuation Model or what RiverRock information he relied on to construct the Model. *See* Annino Dep. Tr. at 106:25-107:12.

5. Abacus's Board of Directors were scheduled to meet on November 9, 2023. Ex. 5 (ABACUS_0001192); Dkt. 85 ¶ 31; Mot. ¶ 18. Prior to the November 9 Board meeting, Mr. Jackson circulated a board deck to Abacus's Board, as was permitted under the Confidentiality Agreement. Ex. 6 (RENEGADE_000047) (the "Board Deck"); Jackson Dep. Tr. at 192:8-19. Two slides of the 38-slide Board Deck contained information pertaining to RiverRock or RiverRock information. Mot. ¶ 20; *id.* at 20-21.

6. One of the two slides contained the Valuation Model. Mot. ¶ 22. Another slide contained other information pertaining to RiverRock, such as its assets under management and the number of its investors. Ex. 6 at 20-21.

7. On November 14, 2023, Jeff Smith, then Abacus's VP of Marketing, sent the wrong Board Deck to ICR, Inc., Abacus's investor relations vendor, who subsequently sent it to Notified to post to Abacus's investor-relations website. *See*

Jackson Dep. Tr. at 254:6-10; Deposition Transcript of Jeff Smith ("Smith Dep. Tr.") (Ex. 7) at 102:5-103:7. It was taken down the next day, on November 15. Smith Dep. Tr. at 102:5-108:7. The Board Deck was only available on Abacus's investor relations page for 29 hours. *Id.*

8. Donna Horowitz, a reporter at The Deal, published an article titled, "Abacus Accidentally Posts Document on Potential RiverRock Deal" on December 5, 2023. Annino Dep. Tr. at 190:21-191:3; Mot. ¶ 34.

Abacus strongly objects to the majority of RiverRock's "material facts," and disagrees that many—except the ones noted above—are truly undisputed and material within the meaning of Federal Rule of Civil Procedure 56. As described in further detail below, most of RiverRock's "facts" are argumentative, incorrect, embellished, or subjective. Still others are pure legal argument. For instance, paragraph 3 submits that "Abacus' breach" is an undisputed fact. Mot. ¶ 3. To the contrary, whether Abacus "breached" the Confidentiality Agreement is at the heart of the parties' dispute, and requires a full hearing. Paragraphs 7, 15, 20-21, 23, 24-25, 29-31, and 35 state in a conclusory fashion that RiverRock provided Abacus with "confidential information" subject to the Confidentiality Agreement. Whether RiverRock's information was covered by the Confidentiality Agreement is, again, subject to a genuine dispute that requires weighing material facts. Likewise, Paragraph 19 takes as given that Abacus would have acquired RiverRock, when the

parties had never even signed a letter of intent and Annino admitted Abacus was not bound to buy RiverRock. Annino Dep. Tr. at 204:23-205:8.

RiverRock's Motion also rewrites, elides, and distorts the record, as several of its citations are contradicted elsewhere in the record. For example, RiverRock contends that [redacted] for two of its funds at the time that the Board Deck was posted. Mot. ¶ 3. But Mr. Annino's deposition shows that this was not the case. [redacted] Annino Dep. Tr. at 61:11-20. Similarly, RiverRock claims that RiverRock employees Amy Springs and Denny Mathew had [redacted] Mot. ¶ 42. RiverRock ignores that Ms. Springs herself said she needed to [redacted], Ex. 7 (RENEGADE_018259), and [redacted]. Ex. 8 (SPRINGS_000049). According to Mr. Annino, [redacted]. Jackson Dep. Tr. at 268:15-24. And when he did, he cited "[redacted]" to explain his departure, Ex. 9 (RENEGADE_014582), before ultimately trying to [redacted] around February 2024. Ex. 8.

In a thinly veiled attempt to lend credibility to its Motion, RiverRock submits three employee "declarations" replete with self-serving testimony. But these resolve none of the disputes, and do not provide clear grounds for

granting summary judgment on liability. Hugh Tawney's Declaration (Dkt. 114-3), for instance, alleges that: the Board Deck contained confidential information (¶ 7); [redacted]. Tawney even purports to offer his opinion on SEC requirements and fiduciary responsibilities (*id.* ¶ 16) and opines that RiverRock did all it could to mitigate damages (*id.* ¶ 20). These statements are, variously, hearsay, not within Mr. Tawney's personal knowledge, legal conclusions that are not for Mr. Tawney to make, improper expert opinion, or – above all – subject to genuine disputes of material fact.

The other declarations fare no better. Denny Mathew's Declaration (Dkt. 114-9), for example, contains pure hearsay as to his conversations with Valerie Coffey (RiverRock's COO at the time) (*id.* ¶ 8); the effect of Horowitz's article on "the industry" and all of RiverRock's employees (*id.* ¶¶ 9-10); and contains statements beyond his personal knowledge as to the effects of the posting of the Board Deck (*id.* ¶ 14). Similarly, Amy Springs' Declaration (Dkt. 113-4), contains hearsay regarding what "most . . . RiverRock employees"

knew, how they felt, and how the deck's posting affected "all" of them (*id.* ¶¶ 8-10); she further asserts legal conclusions as to the confidentiality of the information in the Board Deck (*id.* ¶ 4) and claims facts beyond her personal knowledge with regard to the effect of the posting of the Board Deck on RiverRock (*id.* ¶ 10, 12, 15).

## LEGAL STANDARD

A party is entitled to summary judgment when there is "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). If "a reasonable jury could return a verdict" in favor of the nonmoving party, summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, a court must draw all factual inferences in the nonmovant's favor. *Id.* at 255. Here, RiverRock has the burden of establishing each element of a breach of contract claim: the existence of a valid contract, a material breach of the contract, and damages resulting from the breach. *Cole v. Plantation Palms Homeowners Ass'n, Inc.*, 371 So. 3d 413, 415 n.2 (Fla. Dist. Ct. App. 2023). To recover nominal damages, RiverRock must first prove that Abacus breached the contract. *Muroff v. Dill*, 386 So. 2d 1281, 1283 (Fla. Dist. Ct. App. 1980) (nominal damages appropriate "once the breach of contract had been established").

## ARGUMENT

The parties do not dispute the existence of a valid contract. However, there is a genuine dispute as to (a) whether Abacus materially breached the Confidentiality Agreement[2] and (b) whether RiverRock can recover even nominal damages where, as here, such recovery is contingent on proof of breach which, as discussed above, is subject to factual dispute. *See also* Dkt. 118 (moving for summary judgment due to the absence of proof of causation and the impermissible speculation supporting RiverRock's claimed damages). As to the breach, a reasonable factfinder could find there was no breach for two reasons. ***First***, a reasonable factfinder could conclude that the existence of the potential RiverRock-Abacus transaction was not confidential because it was mutual knowledge of the parties, rather than information that RiverRock disclosed to Abacus. *Infra* at § I.A. ***Second***, a reasonable factfinder could conclude that the contents of the Board Deck were not confidential because they were not treated as confidential or because they were publicly disclosed prior to the alleged breach. *Infra* at § I.B. Finally, because there are genuine

[2] To the extent RiverRock attempts to introduce a new, different theory of breach in paragraph 30 and footnote 94 of its Motion, such an attempt is improper in a motion for summary judgement. *See US Thrillrides, LLC v. Intamin Amusement Rides Int. Corp. Est.*, 767 F. Supp. 3d 1331, 1362 (M.D. Fla. 2025) ("[T]he law is well-established that a party cannot raise for the first time a new theory of liability in summary judgment briefing").

issues of fact as to breach, RiverRock is not entitled to summary judgment as to nominal damages at this stage. *Infra* at § II.

Because a reasonable factfinder could resolve these issues in Abacus's favor, RiverRock's Motion should be denied.

## I. ABACUS DID NOT BREACH THE AGREEMENT

### A. A genuine dispute remains as to the confidentiality of the potential RiverRock transaction.

RiverRock contends that the mere fact that it was in discussions with Abacus was "Confidential Information" as defined in the Confidentiality Agreement. Dkt. 114 at 20-21. But the Confidentiality Agreement does not protect all information concerning RiverRock. Instead, it specifies categories of "Confidential Information." Section 1(a)(i), for example, protects [redacted]"—*i.e.*, the Confidentiality Agreement's own provisions. *Id.* § 1(a)(i). Section 1(a)(ii) protects [redacted]. *Id.* § 1(a)(ii).

Because the first section does not expressly include a potential RiverRock transaction as confidential information, a factfinder must determine whether that information "[redacted]" confidential. *Id.* § 1 (a)(ii). Alternatively, a reasonable factfinder could

determine that RiverRock did not [redacted] the existence of the potential transaction to Abacus. *Id.* A factfinder could also conclude that the existence of the potential transaction was mutual knowledge, rather than a secret that RiverRock [redacted] to Abacus. A reasonable factfinder could find that the existence of the transaction would not logically be considered confidential, so summary judgment is premature as to liability.

The structure of the Confidentiality Agreement underscores this. Section 1(a) provides a definition of "Confidential Information" that includes, among other things, the parties' "[redacted]" That the parties did not include negotiations between themselves suggests at least a genuine dispute as to whether the parties meant for the Confidentiality Agreement to cover this information. *See Briscoe v. Transamerica Premier Life Ins. Co.*, 2024 WL 7031916, at *11 n.3 (S.D. Fla. Nov. 25, 2024) (explaining that "*expressio unius est exclusio alterius*" is a "fundamental principle of contract construction") (citation modified). Similarly, Section 1(b)(i) of the Confidentiality Agreement provides that "Confidential Information" *excludes* information already "in the public domain at the time it was disclosed[.]" The record here reflects that RiverRock did not keep the existence of the transaction confidential. To the contrary, RiverRock was actively soliciting interested buyers from the market at the same time it was in discussions with Abacus. Mr. Annino, RiverRock's CEO, testified that,

at the time he was in contact with Abacus, [redacted] Annino Dep. Tr. at 71:17-24; Ex. 10 (RENEGADE_017632). He also noted that [redacted]. Annino Dep. Tr. 142:23-143:11. RiverRock openly discussed a transaction with these third parties and yet never produced NDAs with those parties, indicating that it did not consider those conversations to be confidential. Ex. 11 (RENEGADE_016218). Indeed, according to Mr. Jackson, that [redacted]. *See* Jackson Dep. Tr. 205:3-17, 209:20-210:15 ([redacted]). Because RiverRock sought out potential buyers on the open market, a reasonable factfinder could conclude that the existence of the potential transaction was not treated as confidential and therefore outside the protection of the Confidentiality Agreement.

**B. A genuine dispute remains as to whether the contents of the Board Deck were confidential.**

RiverRock states that two slides in the Board Deck disclosed purportedly Confidential Information, but this claim suffers from the same deficiencies as the existence of the transaction itself. Slide 20 referenced [redacted]

[redacted][3] Ex. 6 at 20-21. Assuming that RiverRock disclosed this information to Abacus,[4] there is a genuine dispute as to whether this information would "[redacted]." Confidentiality Agreement § 1(a)(ii). Moreover, there is a genuine dispute as to whether this information was "[redacted]" under the Confidentiality Agreement. *Id.* § 1(b).

1. *The information on Slide 20 was not Confidential Information because RiverRock had disclosed it to investors.*

Slide 20 of the Board Deck lists five bullet points about RiverRock. Ex. 6 at 20. The second, third, and fourth bullet points are derived from the Valuation Model and are discussed in the following subsection. *Id.* The two remaining bullet points state that RiverRock has "[redacted]. *Id.* A factfinder could reasonably conclude that neither constitutes Confidential Information because RiverRock had previously disclosed substantially similar information in publicly available documents. *See* RiverRock Funds, *RiverRock Announces the*

---

[3] Both slides are incorrectly numbered as slide 29.

[4] Abacus does not concede this point since, as explained below, Annino himself prepared the Valuation Model and provided it to Abacus via his personal email, indicating that Annino (rather than RiverRock) disclosed this information to Abacus.

*Appointment of Anthony J. Annino* (Nov. 19, 2019), https://www.newswire.com/news/riverrock-announces-the-appointment-of-anthony-j-annino-21037634; RRIF VI, LP, Notice of Exempt Offering of Securities (Form D) (Sept. 6, 2018), https://www.sec.gov/Archives/edgar/data/1664650/000166465018000001/xslFormDX08/primary_doc.xml.

As to assets under management, RiverRock publicly disclosed that it was managing over $220 million in a 2019 Newswire article. RiverRock Funds, *RiverRock Announces the Appointment of Anthony J. Annino* (Nov. 19, 2019), https://www.newswire.com/news/riverrock-announces-the-appointment-of-anthony-j-annino-21037634. As to the number of RiverRock investors, RiverRock had publicly disclosed that it had more than 100 investors in one of its funds as early as 2018. RRIF VI, LP, Notice of Exempt Offering of Securities (Form D) (Sept. 6, 2018), https://www.sec.gov/Archives/edgar/data/1664650/000166465 018000001/xslFormDX08/primary_doc.xml. Both pieces of information were publicly available.

Because RiverRock routinely disclosed this information, it can "be discovered by the public," even if doing so "requires some investigation." *See Smart Commc'ns Holding, Inc. v. Correct Sols., LLC*, 2023 WL 5003169, at *15 (M.D. Fla. Aug. 4, 2023) (government employee's email address could "easily

be obtained by a FOIA request or records search," and was therefore in the public domain). Accordingly, a reasonable factfinder could conclude that both pieces of information were in the public domain and not confidential.

2. *The Valuation Model on Slide 21 was not Confidential Information because it was not marked as confidential and Mr. Annino did not treat it as confidential.*

Slide 21 of the Board Deck contained the Valuation Model. Ex. 6 at 21. Neither party contends that it was "marked" as confidential under Section 1(a)(ii) of the Confidentiality Agreement. Instead, RiverRock asserts that the Valuation Model was confidential because it contained the structure and valuation of the potential acquisition, RiverRock's historical and estimated financial performance, RiverRock's fees, expenses, and sources of income, and projected payroll reductions. Dkt. 114 at 21.

Annino's treatment of the Valuation Model underscores that it cannot "[redacted]" Confidential Information. Annino himself prepared the Valuation Model and sent it to Abacus, though he testified that he could not recall how he put the Valuation Model together or what RiverRock information he relied on. Annino Dep. Tr. at 106:22-107:12. [redacted]. Annino Dep. Tr. 95:17-96:10; *id.* 107:22-24; Ex. 12 (AA 000869) at 869 ("[redacted]n

[redacted].”). That decision matters because Mr. Annino himself had created a data room for exchanging sensitive, transaction-related information only two weeks prior to sending the Valuation Model.[5] *See* Jackson Dep. Tr. 50:1-16; Ex. 13 (ABACUS_0001093). Had Mr. Annino truly considered the Valuation Model confidential, he would have sent it through the data room rather than his personal email. Not only that, Mr. Annino also sent the same Valuation Model to Obra on October 31, 2023, again failing to treat the information according to company policy in a way that would "logically" be considered confidential. Annino Dep. Tr. 109:15-110:9. [redacted]. Ex. 14 (RENEGADE_000973).

Annino's handling of the Valuation Model creates a genuine dispute of material fact. His dissemination from a personal email account, with no markings of confidentiality, to RiverRock and RiverRock's potential transaction partners would allow a reasonable factfinder to determine that the information was not confidential. Moreover, in response to the alleged breach, Mr. Annino told Mr. Jackson that it was "[redacted]." Ex. 15 (ABACUS_0003897 at -899).

[5] The record establishes that nothing in the data room tied out the Valuation Model, raising fact questions as to whether the Model was in fact based on RiverRock's information. Ex. 16 (ABACUS_0001642).

Therefore, the Court should deny RiverRock's summary judgment as to liability.

## II. RIVERROCK IS NOT ENTITLED TO DAMAGES[6]

RiverRock's fallback—that it is entitled to at least nominal damages—fares no better. Nominal damages presuppose proof of breach. *MSM Golf, L.L.C. v. Newgent*, 853 So. 2d 1086, 1087 (Fla. Dist. Ct. App. 2003) (noting that "once [a] jury found that the contract[] had been breached," the plaintiff-appellee was "entitled to nominal damages."). As discussed above, there are several issues of material fact going to the issue of breach. This alone precludes RiverRock's claim for nominal damages. Given the genuine issues that exist as to damages, the Court should deny Plaintiff's motion.

## CONCLUSION

RiverRock asks the Court to prematurely declare that Abacus breached the confidentiality agreement and caused RiverRock harm. The record permits a reasonable factfinder to reach a contrary conclusion, so Abacus respectfully requests that the Court deny RiverRock's motion.

---

[6] Defendant respectfully refers the Court to its Motion for Summary Judgment, which expands on many of the issues discussed in this section. *See* Dkt. 118.

DATED: September 30, 2026

*/s/ Alex Zuckerman*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Alex Zuckerman (*pro hac vice*)
alexzuckerman@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, NY 10016
(212) 849-7000

Jason D. Sternberg (Fla. Bar No. 72887)
jasonsternberg@quinnemanuel.com
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
(305) 402-4880

Kathleen S. Messinger (*pro hac vice*)
kathleenmessinger@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

*Attorneys for Defendant*
*Abacus Life, Inc. n/k/a Abacus Global Management, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 30, 2026, a true and correct copy of the foregoing document was electronically served via the CM/ECF system on all parties authorized to accept service by CM/ECF.

*/s/ Alex Zuckerman*
Alex Zuckerman