**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

RENEGADE CAPITAL GP, LLC d/b/a RIVERROCK FUNDS, LLC, a Delaware limited liability company,

Plaintiff,

v. Case No. 6:25-cv-00424-CEM-NWH

ABACUS LIFE, INC. n/k/a ABACUS GLOBAL MANAGEMENT, INC., a Delaware Corporation,

Defendant.

---

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**

## INTRODUCTION

Abacus' Opposition admits that the parties entered a valid, binding Agreement[1] to maintain confidentiality of RiverRock's "Confidential Information" and that it caused its internal Board Deck to be publicly posted to Abacus' public investor website. Liability is reduced to one question: is the information Abacus published "Confidential Information." There is no genuine dispute of material fact that the published information was "Confidential Information."

## REPLY TO COUNTER-STATEMENT OF FACTS[2]

- In Paragraph 4, Abacus refers to a "case study" sent from Annino to Jackson. But Annino rejected the notion that the Financial Model was a case study.[3] Further, Annino did not say that he did not know how he prepared the model. His testimony reflects that "there are actuals [RiverRock's financials] at the top", that he made assumptions based on what he would do if he were Abacus acquiring RiverRock, and that he relied upon RiverRock's historic financials to prepare it.[4]

- In Paragraph 5, Abacus states that it was permitted to circulate the Board Deck to its board of directors. That Abacus mentions it was "permitted" reflects that even Abacus believed the information in the Board Deck was subject to the Confidentiality Agreement otherwise the mention of permission is superfluous. But permission to disclose information internally under the Agreement's conditions (which Abacus also did not meet) did not authorize publication on an unrestricted investor website. Abacus admits that the deck containing the Financial Model was publicly posted. Abacus fails to mention that it never informed the board (or anyone else at Abacus) that there was "Confidential Information" contained within it. *See* RiverRock's Statement of Undisputed Material Facts in its Motion for Partial Summary Judgment ("SUMF") [ECF No. 117] at SUMF ¶ 30.

---

[1] Capitalized terms and witness names that are undefined here have the same meaning as given in Plaintiff's Motion for Partial Summary Judgment as to Liability. [ECF No. 117].

[2] Abacus fails to address the majority of RiverRock's undisputed material facts and as such RiverRock's material facts may be considered undisputed. *See* Fed. R. Civ. P. 56(e)(2).

[3] Deposition Transcript of Anthony Annino, taken on July 29, 2026 ("Annino Depo."), attached to the Motion for Partial Summary Judgment as Exhibit "B," at 170:16-22 [ECF 117-2].

[4] Annino Depo., at p. 100:12-103:5. The record cite provided by Abacus does not support the proposition Abacus relies on it for. Annino was asked today (three years after the fact) if he would be able to re-create the Financial Model using the documents produced in this case. He responded, "not with 100 percent certainty." This does not suggest that at the time it was created he did not know how he prepared it.

- Abacus's reliance on RiverRock's discussions with other potential buyers does not establish that the specific Abacus transaction or its proposed financial terms were public. Jackson's contemporaneous November 16, 2023 email expressly described information that Abacus was "working on a deal with RR" as "non public information" and warned that its disclosure would affect the potential transaction. SUMF ¶ 24. That specific communication must be distinguished from Jackson's general testimony that RiverRock was potentially for sale. On the contrary, RiverRock provides substantial record evidence showing that RiverRock highly protected the Potential Acquisition and the information in the Financial Model as confidential. *See* SUMF ¶¶ 10, 15, 20-22, 24, 35-37.

- Springs and Mathew both swore that they departed RiverRock due to the breach and Annino testified that RiverRock employees departed due to the breach.[5] SUMF at ¶¶ 35-42. Abacus attempts to manufacture an issue of fact where one does not exist. For Springs, Abacus references an unauthenticated text message dated over three months after the breach and an email dated eight months after the breach neither of which counter against her sworn testimony.[6] For Mathew, Abacus asserts that "[a]ccording to Mr. Annino, Mr. Mathew was always likely to depart RiverRock," (Opp. at p. 5), but this is misleading because the record cite is to *Jackson's* deposition (the Abacus CEO with a clear interest in the outcome of this litigation), not Annino's. Jackson lacks personal knowledge. Abacus' record cite from Mr. Jackson's deposition transcript at page 268:15-24 reads "I don't know Denny," followed by the self-serving hearsay statement offered for the truth of the matter that Annino told him that Denny was "going to potentially depart RiverRock anyway." Hearsay "cannot be considered on a motion for summary judgment." *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). Annino and Mathew's sworn testimony both contradict this self-serving statement. SUMF at ¶¶ 35-42.[7] Regardless, whether employees would have left anyway bears on the

---

[5] Springs declared she "would have continued employment at RiverRock if not for the disclosure." SUMF at ¶ 42. Mathew declared he "had no plans to resign" before the disclosure. *Id.*

[6] Ex. 8 to Abacus' Opposition is a text exchange between Springs and Annino three months *after* the breach at which point RiverRock was already a damaged business. These text messages support Springs declaration statements that the breach caused her departure. By this point, RiverRock had lost half its workforce. Springs references additional work that she is doing to fill the gaps of her departed colleagues, wanting more money to compensate her for the additional roles she is filling, wanting to pick up job searching (which is reasonable during this time period where RiverRock's employees believed their jobs were not secure), and feeling undervalued because she is doing work beyond legal and compliance. This situation was created entirely by the breach. Ex. 7 to the Opposition is an email that Springs sent to a RiverRock limited partner discussing her new role. That she calls a new job "ideal" does not negate her reason for leaving RiverRock. Satisfaction with a subsequent position is consistent with having left RiverRock because of the disclosure and its aftermath.

[7] The Mathew Dec. addresses that Mathews "personal reasons" were his "lack of certainty that [he] would have continued employment at RiverRock either because it would be sold or because the company had been so damaged after the breach that it could no longer operate." SUMF at ¶ 40.

*amount* of RiverRock's loss — not on whether Abacus has liability for the breach. The Court need not resolve that dispute to determine the public-disclosure breach and RiverRock's entitlement to nominal damages.

- Abacus urges the Court to disregard the Tawney, Springs, and Mathew declarations as self-serving, hearsay, and improper expert opinion. (i) The declarations are far from self-serving as the three declarants are *former* RiverRock employees with no stake in this litigation. They are disinterested witnesses, not parties. (ii) Mathews' reference to Coffey and the Deal article are not inadmissible hearsay because they are offered to show his present sense impression and the effect of the disclosure on him and those around him. That Coffey (like Mathew) was blindsided and began looking for other work is offered for its effect rather than its truth. To the extent Coffey's statement that she was "unaware" is considered for its content, it reflects her own then-existing state of mind, and Mathew's observation that she "began looking for new employment." (iii) an officer (or former officer) may give opinion testimony grounded in his role without being qualified as an expert, "because of the particularized knowledge that the witness has by virtue of his or her position in the business." *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1218 (11th Cir. 2003). Tawney's statements about capital-raising were expressly grounded in his role — "Based on [his] professional experience," as RiverRock's head of fundraising. SUMF at ¶¶ 37, 43, 45-46. Springs, as RiverRock's former General Counsel and Chief Compliance Officer, testified from personal knowledge of RiverRock's own disclosure practices, stating she was "familiar with the information RiverRock made publicly available," and that the information in the Financial Model, when shared at all, "was safeguarded with a confidentiality agreement." SUMF at ¶ 15.

## ARGUMENT

### A. The Published Information is "Confidential Information."

Section 1(a) protects information concerning RiverRock that is marked "or would logically be considered" confidential, furnished "by or on behalf of" RiverRock, "or otherwise obtained" by Abacus, regardless of the form of communication. It expressly includes analyses and studies that contain, reflect, or are generated from that information, as well as information concerning finances, forecasts, employees, potential strategic relationships, and anything that would "logically be considered. . . confidential". SUMF ¶ 10. Abacus argues that the definition does not expressly

identify the Potential Acquisition. Opp. 9–10. But the definition expressly states that its enumerated categories "shall not be limited to" the listed examples and specifically includes "potential strategic relationships," "corporate and financing structures," "strategies related to the business," and "all other non-public . . . information used" by RiverRock. SUMF ¶ 10. Abacus also invokes the reference to "business dealings and negotiations with third parties" to suggest that negotiations between RiverRock and Abacus are excluded. Opp. 10. That inference cannot be reconciled with the definition of "Confidential Information" as a whole. Here, where the language is clear, the Agreement "must be interpreted and enforced in accordance with its plain meaning." *Seaside Town Council, Inc. v. Seaside Cmty. Dev. Corp.*, 347 So. 3d 89, 95 (Fla. 1st DCA 2021). The information Abacus disclosed includes Abacus's proposed acquisition of RiverRock, the proposed valuation and deal structure, and projected financial results and payroll reductions. SUMF ¶¶ 19–22. These disclosures concern RiverRock's potential strategic relationship with Abacus, its finances, and strategies related to its business and the future of its business. The nonexclusive list separately protects these categories of information. Treating the reference to third-party negotiations as an exclusion would improperly narrow those applicable categories.[8]

Abacus's "mutual knowledge" argument likewise overlooks the definition's text. Opp. 9–10. Section 1(a) covers information furnished "by or on behalf of"

---

[8] In *Berman Construction & Development, Inc. v. Carnaval Home, LLC*, 434 So. 3d 729, 734–35 (Fla. 4th DCA 2026), the court rejected an application of *expressio unius* that would render an expansive catchall meaningless. The same reasoning applies here: an illustrative reference to third-party negotiations cannot override the definition's expressly nonexclusive scope.

RiverRock or "otherwise obtained" by Abacus, including analyses that contain, reflect, or are generated from that information. SUMF ¶ 10. The parties' shared knowledge of the negotiations do not establish that the information was public or authorize Abacus to disclose it publicly. Section 1.1(b) of the Agreement carves out four exceptions to confidentiality. Here, the list is exhaustive and does not carve out an exception for the alleged "mutual knowledge" of the parties.[9] The contemporaneous record further supports a finding that the disclosure contained Confidential Information. On November 16, 2023, Jackson described Coventry's awareness that Abacus was "working on a deal with RR" as "non public information" that would affect the potential deal. SUMF ¶ 24.[10]

## B. <u>The Potential Acquisition was Treated as Strictly Confidential.</u>

Abacus offers no evidence that the existence of the Potential Acquisition was in the public domain.[11] Abacus relies on RiverRock's discussions with Obra and Coventry to argue that the Potential Acquisition was not confidential. Opp. 10–11. Discussions with other prospective acquirers do not establish that RiverRock publicly disclosed its negotiations with Abacus, the proposed transaction terms, or the Financial Model. The record evidence contradicts Abacus's suggestion that RiverRock

[9] Abacus's observation that the parties had not signed a letter of intent and that Abacus was not obligated to acquire RiverRock does not change that conclusion. Opp. 4–5. The Agreement protected information exchanged in evaluating a potential transaction; its confidentiality obligations did not depend on a commitment to consummate the acquisition.

[10] That communication addresses the specific Abacus–RiverRock Potential Acquisition, distinguishing it from general industry awareness that RiverRock might consider a sale.

[11] Jackson's "widely known" assertion that RiverRock was open to acquisition is not competent evidence. A conclusory, self-serving assertion—with no date, no source, no explanation of how anyone came to know this information or who knew this information—does not create a genuine dispute.

shared acquisition information without confidentiality protections. Annino testified that Obra and RiverRock were bound by an NDA.[12] RiverRock likewise had an NDA with Coventry.[13] This is consistent with the Springs and Tawney Declarations and Annino's testimony that the Board Deck contained "Confidential Information that was not supposed to be published."[14]

## C. <u>The Financial Model Was Treated as Confidential.</u>

Abacus identifies no public source disclosing the Financial Model's detailed financial information before the Board Deck was posted.[15] Those contents fall within the Agreement's protection for information concerning RiverRock's finances, forecasts, employees, and business strategies, as well as analyses reflecting or generated from that information. SUMF ¶¶ 10, 22. The public sources Abacus cites do not establish otherwise.[16] Opp. 12–14. The absence of a "confidential" marking

---

12 Annino Depo., at p. 108:21-109:18. Exhibit 12 to Annino's deposition reflects email correspondence between Obra and RiverRock on October 8-9, 2023, where Annino makes "a few nits to the NDA" and Obra writes back "Please find the fully executed version attached here. That exchange preceded Annino's October 31, 2023 transmission of the Financial Model to Obra. Abacus's law firm also represented Obra in the concluded lawsuit *Renegade Capital GP LLC d/b/a RiverRock Funds LLC v. Obra Capital Mgmt.*, LLC, C.A. No. N25C-03-114 MAA (CCLD) and therefore is fully aware that there was an NDA in place with Obra.

13 Annino Depo., at Ex. 23. On November 17, 2023, Lucas Siegel writes to Annino referencing the NDA in place with Coventry.

14 Annino Depo., p. 150:23-25.

15 It contained RiverRock's management fees, acquisition fees, payroll, commissions, net income or loss, projected cash flow, valuation, and proposed payroll reductions. SUMF ¶¶ 15, 19–22.

16 The 2019 announcement only reported that RiverRock managed more than $220 million in assets. It does not disclose RiverRock's management fees, acquisition fees, payroll, rent, commissions, net income loss, payroll reductions, pro-forma cash flow and/or any other financial term in the Financial Model. The 2018 Form D concerns RRIF VI, LP and reports information about that fund's offering and investors—not the management company's financial performance or the proposed Abacus transaction.

likewise does not establish that the model was unprotected.[17] Annino's transmission of the Financial Model from his personal email further supports the position that the Financial Model was Confidential. Annino explains: "these discussions thus far have not involved anyone else at RiverRock, hence please use this email for the time being."[18] Abacus's related contention that Annino personally supplied the model, rather than RiverRock, overlooks his role as RiverRock's CEO and the Agreement's coverage of information supplied "by or on behalf of" RiverRock or "otherwise obtained" by Abacus. SUMF ¶ 10. Finally, the Agreement does not condition protection on transmission through a data room. It expressly applies "irrespective of the form of communication." SUMF ¶ 10.[19]

## CONCLUSION

Because the undisputed record establishes the existence of a valid Agreement, Abacus's breach thereof, and RiverRock's entitlement to at least nominal damages, RiverRock is entitled to partial summary judgment as to Abacus's liability reserving the existence, causation, and amount of compensatory damages for trial.

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0535

---

17 Section 1(a) expressly covers information that is marked "or would logically be considered" confidential. SUMF ¶ 10. Abacus's argument would improperly eliminate the second alternative.

18 Annino Depo., at Ex. 12 (regarding negotiations with Obra). Even if Annino did violate company policy, that would be an issue between Annino and RiverRock. It would not strip the document of its confidential nature. Nevertheless, Annino testified that "Gabe [RiverRock's principal] was aware." *id.* at p. 92:13-93:9.

19 Annino's later retention of the model and February 2024 transmission back to RiverRock likewise do not establish that its contents were publicly available before Abacus's disclosure.

By: */s/A. Sheila Oretsky*
A. SHEILA ORETSKY
*Lead Counsel*
Florida Bar No. 31365
sheila.oretsky@gtlaw.com
raquel.acuna@gtlaw.com
JENNIFER JUNGER
Florida Bar No. 125853
jungerj@gtlaw.com
fernandezfe@gtlaw.com

*Attorneys for Plaintiff Renegade Capital GP, LLC d/b/a RiverRock Funds, LLC*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 14th day of October, 2026, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ A. Sheila Oretsky*
A. Sheila Oretsky