**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

RENEGADE CAPITAL GP, LLC d/b/a RIVERROCK FUNDS LLC, a Delaware limited liability company,

Plaintiff,

v.

ABACUS LIFE, INC. n/k/a ABACUS GLOBAL MANAGEMENT, INC., a Delaware Corporation,

Defendant.

Case No.: 6:25-cv-00424-CEM-NWH

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................ 1
ARGUMENT ........................................ 2
CONCLUSION ........................................ 7

# TABLE OF AUTHORITIES

**Page**

## Cases

*Action Nissan, Inc. v. Hyundai Motor Am. Corp.*,
2025 WL 4031607 (M.D. Fla. Aug. 18, 2025) ....................3

*Katz Deli of Aventura, Inc. v. Waterways Plaza, LLC*,
183 So. 3d 374 (Fla. 3d DCA 2013) ....................4

*Mut. of Omaha Mortg., Inc. v. Waterstone Mortg. Corp.*,
2024 WL 1346980 (M.D. Fla. Mar. 29, 2024) ....................3

*Nebula Glass Int'l, Inc. v. Reichhold, Inc.*,
454 F.3d 1203 (11th Cir. 2006) ....................2, 5

*Sostchin v. Doll Enters., Inc.*,
847 So. 2d 1123 (Fla. 3d DCA 2003) ....................5

*State Farm Auto. Ins. Co. v. Fakhoury Med. & Chiropractic Ctr., P.L.L.C.*,
2023 WL 6167732 (M.D. Fla. Sept. 22, 2023) ....................6

*Stensby v. Effjohn Oy Ab*,
806 So. 2d 542 (Fla. 3d DCA 2001) ....................4, 7

*Sun Ins. Mktg. Network, Inc. v. AIG Life Ins. Co.*,
254 F. Supp. 2d 1239 (M.D. Fla. 2003) ....................2, 5

*Trasco Wellness, LLC v. Tampa Bay Spine & Sports Med., LLC*,
2025 WL 2645338 (M.D. Fla. Sept. 15, 2025) ....................6

*W.W. Gay Mech. Contractor, Inc. v. Wharfside Two, Ltd.*,
545 So. 2d 1348 (Fla. 1989) ....................2, 4

## Other Authorities

Fed R. Civ. P. 26 ....................6

Fed. R. Civ. P. 37 ....................6

Fed. R. Civ. P. 56 ....................7

# PRELIMINARY STATEMENT

RiverRock, a serially unprofitable business, seeks $13.6 million in damages from lost profits it projects it would have earned over ten years from one fund that raised only [redacted] of its target capital raise[1] and one fund that ***never opened***. Abacus's Motion for Summary Judgment (Dkt. 112, the "Motion" or "Mot.") showed that RiverRock's alleged damages are too speculative to be proven with the reasonable certainty Florida law requires. In its Response in Opposition to Defendant's Motion for Summary Judgment (Dkt. 136, the "Opposition" or "Opp."), RiverRock argues that because its expert derived a yardstick from aspects of RiverRock's fundraising history, any criticism of his approach must go to trial. But the adequacy of RiverRock's yardstick is a threshold question the Court can and should decide on summary judgment.

RiverRock's yardstick fails because it relies on assumptions that are not reasonably certain, as Florida law requires. RiverRock's expert projects fundraising for Fund VIII and the Longevity Fund from commitments to Funds IV through VI, which were launched years earlier, before those funds delivered [redacted]. By 2023, investors knew those results, including [redacted] trending similarly. Accordingly, by May 2023, many investors had already passed on Fund VIII because of RiverRock's [redacted] Capital raised from Funds

[1] [redacted] Harris Report (Dkt. 130-2 at 11 n.5).

IV-VI—before investors knew their abysmal returns—cannot predict what they would do once they knew. RiverRock's lead authority is not to the contrary. *W.W. Gay* eliminated the *per se* bar on lost profits for businesses without a track record but Florida law still requires a reasonable yardstick, and a record of losses cannot produce one. *See, e.g.*, *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1217 (11th Cir. 2006). The Court should grant Defendant's Motion because RiverRock's damages are too speculative as a matter of law.

The Court should also grant Defendant's Motion on causation. Nothing in the record shows that RiverRock's damages resulted from Abacus's alleged 29-hour disclosure, [redacted]. The declarations—from witnesses that were not previously disclosed to Defendant in violation of Rules 26 and 37—offered to fill that gap are not admissible, cannot be considered on summary judgment, and, even if considered, do not cure the lack of causation.

**ARGUMENT**

Each of RiverRock's arguments in its Opposition to the Motion fails.

***First,*** RiverRock has not supplied a reasonable yardstick for its claimed lost profits. It assumes that an expert report and a theory of damages are enough to create a genuine dispute of material fact, and it recasts Abacus's argument as a demand that RiverRock identify "each hypothetical investor" (Opp. at 17), neither are true. Florida

law requires a reasonable basis for concluding that RiverRock would have attracted the capital its expert assumes. *See Sun Ins. Mktg. Network, Inc. v. AIG Life Ins. Co.*, 254 F. Supp. 2d 1239, 1247 (M.D. Fla. 2003) (noting that future profits calculations may be supported by "reasonably certain" assumptions). Here, the only basis RiverRock offers is Harris's yardstick.[2] RiverRock's yardstick assumes that [redacted] which is precisely the kind of "best case scenario predictions" that cannot sustain a lost profits award. *Id.*[3] Even if Harris's "best case scenario predictions" could support a lost profits award, his assumptions are belied by the record.

[redacted] Farber Report (Dkt. 130-15) ¶¶ 20-24; *id.* Attachment E-1; Harris Dep. Tr. (Dkt. 130-3) at 73:21-74:8. Indeed, by 2023, Fund VI's projection had [redacted]. Farber Report ¶ 36; Dkt. 118-8 at AA_000845. Fund VIII's initial close was [redacted]—long before the alleged breach—

---

[2] Attacking Abacus for relying on "new-business authorities" (Opp. at 16-17), RiverRock ignores that the "yardstick test is appropriate for newer businesses that lack a well-established record of earnings." *Action Nissan, Inc. v. Hyundai Motor Am. Corp.*, 2025 WL 4031607, at *2 (M.D. Fla. Aug. 18, 2025).

[3] That Abacus's expert agreed that Harris seems to have applied the yardstick method (Opp. at 1), does not change the analysis or counter his issues with Harris's application. *See, e.g.*, Harris Dep. Tr. at 65:2-10; 98:12-13. A shared method does not cure unreasonable assumptions, and whether Harris's report provides an adequate "yardstick" is a question of law. *See Mut. of Omaha Mortg., Inc. v. Waterstone Mortg. Corp.*, 2024 WL 1346980, at *3 (M.D. Fla. Mar. 29, 2024).

and as early as [redacted]. Farber Report ¶¶ 31-33. Two months before the alleged breach, RiverRock's own CEO attributed its [redacted] to [redacted] Dkt. 118-8 at AA_000844; Annino Dep. Tr. (Dkt. 130-6) at 36:2-6. RiverRock's capital contributions chart and its reliance on a May 2023 Fund VII capital call (Opp. at 11-14 & n.55), confirm the point. The chart tracks [redacted] and, as to the alleged capital call, it was honored by investors already bound to fund it. *Id.* at n.55; Annino Dep. Tr. at 29:19-30:24. Nor does Harris's haircut to 62.87% cure the problem (Opp. at 9), because it discounts from [redacted] Farber Report at 9. None of this shows that investors would have committed [redacted] to RiverRock in 2023.

RiverRock's reliance on *Katz Deli of Aventura, Inc. v. Waterways Plaza, LLC*, 183 So. 3d 374 (Fla. 3d DCA 2013), does not help. In *Katz Deli*, the yardstick was the plaintiff's sales at its other locations, generated by a "successful, ongoing business" that "would have continued to yield profits." *Id.* at 378, 382. RiverRock offers no comparable profitable operations, only funds raised before its losses materialized. *W.W. Gay* and its progeny similarly make clear that RiverRock is still required to offer "some standard by which the amount of damages may be adequately determined." *W.W. Gay Mech. Contractor, Inc. v. Wharfside Two, Ltd.*, 545 So. 2d 1348, 1351 (Fla. 1989). A standard built on fundraising that preceded RiverRock's losses in Funds IV-VI cannot measure fundraising after them. *See Stensby v. Effjohn Oy Ab*, 806 So. 2d 542,

544 (Fla. 3d DCA 2001) ("woeful" financial condition of company was to be considered in determining lost profits). Nor can RiverRock avoid its own losses by asserting, without any citation or documentary support, that its "fee-receiving entity" was profitable on a standalone basis. Opp. at 18.

***Second,*** Harris's model independently fails because it miscalculates RiverRock's claimed profits. A lost profits calculation that omits compensation is "inadequate as a matter of law," because Florida law requires deduction of all fixed and variable costs. *Sostchin v. Doll Enters., Inc.*, 847 So. 2d 1123, 1126-27 (Fla. 3d DCA 2003). RiverRock contends that the disclosure drove out the staff without whom it "could not meaningfully fundraise." Opp. at 15 n.56. Yet Harris holds salaries [redacted] (Farber Report ¶ 84), so his but-for world earns the fees that staff would have generated for RiverRock without accounting for RiverRock having to pay that staff. RiverRock's answer—that those salaries were fixed (Opp. at 19 n.62)—does not change the result, because fixed costs must be deducted too. *See Sun Ins.*, 254 F. Supp. 2d at 1249 ("an expert may not ignore salaries to create an alternative cost pattern to influence value").

***Third,*** RiverRock has not raised a genuine dispute that the alleged breach, rather than its preexisting decline, caused its claimed losses. The uncertainty that defeats recovery of lost profits is uncertainty about "the cause of the damage rather than the amount." *Nebula Glass*, 454 F.3d at 1214. It is undisputed that RiverRock's fundraising had stalled before the posting, yet Harris made no attempt to separate any effect of the posting from that decline, instead assuming that [redacted] of the shortfall was

attributable to Abacus. Harris Dep. Tr. 52:8-19, 54:8-16. RiverRock responds that its fact witnesses supply causation (Opp. at 19-20), but they [redacted] Annino Dep. Tr. 154:5-155:23. And the fundraising freeze RiverRock attributes to Abacus was RiverRock's own decision, made when its general counsel allegedly directed the company to stop fundraising. Opp. at 9-10. That choice cannot establish that investors would have committed the capital Harris assumes.

Moreover, the declarations RiverRock offers to fill its evidentiary gap cannot be considered. Springs and Mathew appear nowhere in RiverRock's initial or amended disclosures (Ex. 1), and RiverRock never supplemented them before discovery closed on July 31. A party that fails to disclose a witness "is not allowed to use that ... witness to supply evidence on a motion" unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). RiverRock shows neither. Its only explanation is that its disclosures covered "anyone that worked at RiverRock" (Ex. 2), but such "broad categorizations" do not satisfy Rule 26. *State Farm Auto. Ins. Co. v. Fakhoury Med. & Chiropractic Ctr., P.L.L.C.*, 2023 WL 6167732, at *2 (M.D. Fla. Sept. 22, 2023). Nor does listing Springs and Mathew among departed employees in an interrogatory answer (Dkt. 130-14 at 8-9), make known that RiverRock would rely on them to prove causation and damages. *See Trasco Wellness, LLC v. Tampa Bay Spine & Sports Med., LLC*, 2025 WL 2645338, at *2 (M.D. Fla. Sept. 15, 2025) (witnesses mentioned in discovery "does not absolve" disclosure obligations).

The Tawney declaration fares no better. Tawney's testimony on [redacted] (Dkt. 136-6 ¶¶ 11-12, 14-17, 20) rest on speculation, hearsay, and lay opinion, and they should be disregarded for the reasons set out in Abacus's opposition to RiverRock's partial motion. Fed. R. Civ. P. 56(c)(4); Dkt. 132 at 5-7. In any event, the declarations establish only that employees left and that RiverRock chose to stop fundraising, not that investors would otherwise have committed the capital Harris assumes.

RiverRock asks the Court to accept a causal chain that is attenuated. To accept RiverRock's theory, one must assume that [redacted]. Harris Dep. Tr. 80:18-24, 157:11-158:14. Florida law does not permit recovery that depends on such a "host of intervening contingencies." *Stensby*, 806 So. 2d at 544.

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendant's Motion.

DATED: October 14, 2026

*/s/ Alex Zuckerman*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Alex Zuckerman (*pro hac vice*)
Joshua Hall (*pro hac vice*)
alexzuckerman@quinnemanuel.com
joshuahall@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, NY 10016
(212) 849-7000

Jason D. Sternberg (Fla. Bar No. 72887)
jasonsternberg@quinnemanuel.com
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
(305) 402-4880

Kathleen S. Messinger (*pro hac vice*)
kathleenmessinger@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

*Attorneys for Defendant*
*Abacus Life, Inc. n/k/a Abacus Global Management, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 14, 2026, a true and correct copy of the foregoing document was electronically served via the CM/ECF system on all parties authorized to accept service by CM/ECF.

*/s/ Alex Zuckerman*
Alex Zuckerman